(Nos. 32543, 32544.)

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* VERNON McGOWAN, Plaintiff in Error.—Same Defendant in Error, *vs.* THOMAS McGOWAN, Plaintiff in Error.

*Opinion filed May 20, 1953—Rehearing denied September 21, 1953.*

FRANK J. FERLIC, JOSEPH D. GANNON, and EUGENE WOOD, all of Chicago, for plaintiffs in error.

IVAN A. ELLIOTT, Attorney General, of Springfield, and JOHN S. BOYLE, State's Attorney, of Chicago, (JOHN T. GALLAGHER, RUDOLPH L. JANEGA, ARTHUR F. MANNING, WILLIAM J. McGAH, JR., and EUGENE F. WELTER, all of Chicago, of counsel,) for the People.

Mr. JUSTICE DAILY delivered the opinion of the court:

Upon separate informations filed in the municipal court of Chicago, plaintiffs in error, Vernon McGowan and Thomas McGowan, were tried and convicted by the court, after waiving a jury, for knowingly possessing "policy slips" in violation of section 3 of the act to prevent policy-playing. (Ill. Rev. Stat. 1951, chap. 38, par. 414.) Each was sentenced to a term of thirty days in the house of correction and each has sued out a writ of error from this court. Since identical issues are presented the causes have been consolidated for purposes of opinion.

Although the crime for which plaintiffs in error were charged and convicted is a misdemeanor, reviewable in the first instance by writs of error sued out of the Appellate Court, (Ill. Rev. Stat. 1951, chap. 38, par. 780½,) they seek to have the cause reviewed in this court on the ground that they were illegally arrested and searched in violation of section 6 of article II of the Illinois constitution and the fourth amendment to the Federal constitution. Since a sufficient number of my colleagues construe the contention as involving a fairly debatable constitutional question which was passed upon by the trial court, we have taken jurisdiction over the contention of the People that the cause should be transferred to the Appellate Court.

The record discloses that Chicago police officers, proceeding in the course of their duties, observed Vernon McGowan park his automobile near a building at 2944 Vernon Avenue, after which he entered the building by the rear basement door. Shortly thereafter three men, Thomas McGowan, Kermit Dowkins, and Washington

Taylor, emerged from the same door carrying four bulging canvas zippered bags of the same type. Two of the bags were carried by Dowkins and were open at the top disclosing to the view of the officers that they contained policy slips. All three men were arrested on the spot and the canvas bags taken from them and those carried by Taylor and Thomas McGowan were likewise found to contain policy slips. While two officers kept the three men in custody, officers Allman and Flynn went to the basement door and knocked. They received no answer and Allman then went to the first-floor front door and told the landlady that he wanted to see Vernon McGowan, who was in the basement. She led him through her apartment to the kitchen door and told him to go outside to the basement door, then she went to the basement by an inside stairs, opened the basement door and admitted the officers. The front part of the basement was partitioned off and the door leading to that space was locked from the inside. Allman then started up the inside staircase and encountered Vernon McGowan on a landing where he was peeking out a window. He brought McGowan to the partitioned space and asked him to tell the persons inside to open the door. McGowan replied: "You are a policeman, smash it in," following which the officers took the pins from the hinges and removed the entire door. They found four men in the room, two of whom had ink smeared on their hands similar in color to that used on the policy slips. There was also a small closet, the door of which was locked. The officers removed the hasp and broke the lock and found two large bags containing policy slips, a small box of policy slips, two printing presses, type, paper and ink. All the men in the room were arrested and later, at the police station, policy slips and a rent receipt for the front basement rooms were taken from the person of Vernon McGowan.

Before each cause was heard, motions were presented seeking to suppress from evidence the "policy parapher-

nalia" allegedly seized by the officers forcibly and without right of search warrant. After hearing evidence, the motions to suppress were denied.

Plaintiffs in error contend that the police had no information that they were in the commission of any crime at the time of their arrest, that there is no evidence to show that they were in the commission of a crime, and that the police had no reason to believe that they had committed an offense or were in the commission of a crime. Thomas McGowan asserts that he was merely walking down the street carrying a zippered bag fully closed and Vernon McGowan contends that he was doing nothing more suspicious than standing in a building looking out a window. It is their position that, since the officers did not have warrants for their arrest, the arrest was illegal and the searches made incident thereto were in violation of the State and Federal constitutions.

The fourth amendment to the Federal constitution provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." Section 6 of article II of our constitution is in substantially the same language. It is these provisions, and the rights secured by them, which plaintiffs in error claim have been violated.

Section 4 of division VI of our Criminal Code (Ill. Rev. Stat. 1951, chap. 38, par. 657,) makes this provision: "An arrest may be made by an officer or by a private person without warrant, for a criminal offense committed or attempted in his presence, and by an officer, when a criminal offense has in fact been committed, and he has reasonable ground for believing that the person to be arrested has committed it." In construing this provision of the code, we have held that the term "criminal offense" includes

misdemeanors as well as felonies. (*People* v. *Roberta,* 352 Ill. 189; *People* v. *Scalisi,* 324 Ill. 131.) We have likewise upheld the provision that where a criminal offense has been committed, an officer has the right to arrest without a warrant provided he has reasonable ground for believing that the person to be arrested is implicated in the offense. (*People* v. *Humphreys,* 353 Ill. 340; *People* v. *McGurn,* 341 Ill. 632; *People* v. *Swift,* 319 Ill. 359.) To justify the arrest by an officer without a warrant, his ground for belief that the person arrested is guilty must be such as would influence the conduct of a prudent and cautious man under the circumstances. (*People* v. *Macklin,* 353 Ill. 64; *People* v. *Doody,* 343 Ill. 194.) It has also been stated that whether or not in a given case there are reasonable grounds to warrant an arrest is a mixed question of law and fact. No general rule applicable to every case has been, or probably can be, announced as to what facts will constitute justification, in law, for an arrest by an officer without a warrant, other than that such ground of suspicion or belief exists as should influence the conduct of a prudent and cautious man under the circumstances. (*People* v. *Roberta,* 352 Ill. 189.) From these cases it may be seen that the constitutional prohibitions relied upon by plaintiffs in error extend only to unreasonable arrests.

A further well-established legal concept which concerns our interpretation of the facts in this case is that if the right of arrest exists the right of search and seizure is incidental thereto. In *People* v. *Hord,* 329 Ill. 117, we stated that generally, when an arrest is made by an officer who has reasonable grounds for believing the person arrested is implicated in the crime, the officer has the right to arrest without a warrant and to search the party arrested without a search warrant, inasmuch as the guaranty of the constitution is not against all search and seizure but against unreasonable search and seizure, and does not extend to immunity from search as an incident to a valid arrest.

Among the cases enumerating the same principle are *North v. People,* 139 Ill. 81, *People v. Preston,* 341 Ill. 407, and *People v. Humphreys,* 353 Ill. 340. The interpretation of the constitutional prohibition has likewise been considered many times by the Supreme Court of the United States, and from their decisions it may be taken as well settled that a valid arrest is accompanied by the right to search the person of the one arrested and also to search things within his immediate control. (See: Annotation, 94 L. ed. 671.) In discussing the scope of the exceptions to the prohibition of the fourth amendment, the court said in *United States v. Rabinowitz,* 339 U.S. 56, 94 L. ed. 653: "The right 'to search the place where the arrest is made in order to find and seize things connected with the crime as its fruits or as the means by which it was committed' seems to have stemmed not only from the acknowledged authority to search the person, but from the long-standing practice of searching for other proofs of guilt within the control of the accused upon arrest. [Citation] It became accepted that the premises where the arrest was made, which premises were under the control of the person arrested and where the crime was being committed, were subject to search without a search warrant. Such a search was not 'unreasonable'."

We think it manifest from the facts in this record that the arrests and searches of which plaintiffs in error complain, fall within the well-defined exceptions to the prohibitions of the respective constitutions. Section 3 of the act to prevent policy-playing (Ill. Rev. Stat. 1951, chap. 38, par. 414,) provides in part as follows: "The possession by any person other than a public officer, of any writing, paper or document representing or being a record of any chance, share or interest in numbers sold, drawn or to be drawn, or in what is commonly called 'policy,' * * * is presumptive evidence of possession thereof knowingly and in violation of the provisions of this act." When the police

officers observed Dowkins carrying a bag which was open in such a manner that policy slips could be seen, it was obvious to the officers that he was violating the foregoing provision of the code. When it is considered that Dowkins' companion, Thomas McGowan, was seen to emerge from the building carrying a bag of a similar type and similar in appearance, we believe such facts were sufficient to justify the belief of a prudent and cautious man that McGowan was likewise implicated in the offense and that the bag carried by him also contained policy slips. Under such circumstances, we must conclude that the arrest of Thomas McGowan and the search made incident thereto were justified under the law.

Turning to the arrest of Vernon McGowan and the search of the premises where he was found, we note that officer Allman testified that in his capacity of police officer he had previously known all of the men who were seen and found at 2944 Vernon Avenue on the day in question. It was apparent after the arrest of Dowkins and his companions that the laws relating to policy were being violated. The officer had seen Vernon McGowan enter the basement door from which the first three men arrested had emerged a moment later with policy slips in their possession, and, knowing the association of the men, it was reasonable for him to believe that Vernon McGowan was likewise implicated and that the premises housed things connected with the crime. Under the authorities discussed and in view of the validity of the arrest of Thomas McGowan, Dowkins, and Taylor, we must conclude that the right to search without a warrant was, in this case, contemporaneously extended to the premises from which the violators had come. The attitude displayed by Vernon McGowan when the landlady admitted the officers to the basement further justified a belief in the officers that Vernon was implicated and that articles used in connection with the crime were present. We conclude that the arrests of the plaintiffs in

error without warrants were lawful and that the evidence obtained from the contemporaneous searches, both of the premises and their persons, was lawfully seized and properly admitted.

Plaintiffs in error next contend that the informations filed against them failed to describe with particularity and with certainty the kind of a writing or paper that was in their possession, *viz.,* whether it was a document or a record of a chance, share or interest in numbers sold, drawn or to be drawn, or whether it was based upon a public or private lottery, or whether it was any paper printing relating to numbers or device or policy slips of any kind. An examination of the respective informations reveals that they charge as follows: "* * * did then and there, not being a public officer, knowingly and unlawfully have in his possession a writing, paper or document, representing or being a record of any chance, share or interest in numbers sold, drawn or being drawn or in what is commonly called 'Policy' or in the nature of a bet, wager, or insurance upon the drawing or drawn numbers of any public or private lottery * * *." The information substantially uses the language of the statute. The offense is statutory, and where the statute sufficiently defines the crime it is sufficient that the indictment or information charged the breach thereof in words of the statute. *People v. Green,* 362 Ill. 171; *People v. Schreiber,* 250 Ill. 345; *McCracken v. People,* 209 Ill. 215; *Meadowcroft v. People,* 163 Ill. 56.

They next contend that they were not found guilty as required by law, because the judgment of the court neglected to state that they knowingly had policy tickets in their possession, and in support of this contention cite the case of *People v. Edge,* 406 Ill. 490, in which we held that it was necessary to use the word "knowingly" in an information filed under the same section of the statute. There is no merit to their contention in this regard. The rule is

that in determining the sufficiency of a judgment of conviction based thereon the entire record will be searched and all parts of the record interpreted together, and a deficiency in one place may be cured by what appears in another. (*People* v. *Woods,* 393 Ill. 586; *People ex rel. Ewald* v. *Montgomery,* 377 Ill. 241; *People ex rel. Sammons* v. *Hill,* 345 Ill. 103.) Since the informations in the instant case both alleged that the plaintiffs in error knowingly had the policy tickets in their possession, the deficiency is cured and the judgment is deemed sufficient.

The information against Vernon McGowan, which was sworn to on April 10, 1952, and presented and ordered filed and filed on the same date, showed, upon its face, that the date of the offense alleged therein was "the 7th day of April, 19___." This violates the rule that an information must allege the commission of an offense on a certain date prior to the filing of the information, which must be within the time fixed by law for the prosecution of the offense. (*People* v. *Angelica,* 358 Ill. 621.) Such irregularity is one of form only. In addition plaintiff in error neglected to take advantage of this defect in apt time. Section 9 of division XI of the Criminal Code (Ill. Rev. Stat. 1951, chap. 38, par. 719,) provides in part: "All exceptions which go merely to the form of an indictment, shall be made before trial, and no motion in arrest of judgment, or writ of error, shall be sustained, for any matter not affecting the real merits of the offense charged in the indictment." Plaintiff in error not only neglected to file a motion to quash or a request for bill of particulars, but he did in fact file a motion to suppress the evidence which stated in part "that on, to-wit the 7th day of April, A.D. 1952, the police department of the City of Chicago, through its police force, forcibly and without right of search warrant, did seize and take evidence, * * *." He was in fact fully informed of the date the offense was alleged to have been committed, and, furthermore, the proofs submitted in the trial of the case

indicated that the offense was actually committed well within the period provided for by the statute of limitations. We are, therefore, of the opinion that the defect was not fatal in the instant case.

It is unnecessary for us to consider the contention of plaintiffs in error that prejudicial testimony was introduced in evidence showing that plaintiffs had been previously arrested, as the question was not saved for review by an objection and ruling preserved in the record for review.

We have carefully examined the entire record in this cause and the points and authorities submitted by counsel for plaintiffs in error, and are of the opinion that the judgments of the municipal court of Chicago should be affirmed.

*Judgments affirmed.*