(No. 34372.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* FRED BOOZER, Plaintiff in Error.

*Opinion filed September 20, 1957—Rehearing denied Nov. 19, 1957.*

PAPANEK AND SCHILLER, of Chicago, (J. ROBERT HARE, of counsel,) for plaintiff in error.

LATHAM CASTLE, Attorney General, of Springfield, and BENJAMIN S. ADAMOWSKI, State's Attorney, of Chicago, (FRED G. LEACH, BRUCE E. KAUFMAN, L. LOUIS KARTON, and FRANCIS X. RILEY, of counsel,) for the People.

Mr. CHIEF JUSTICE DAVIS delivered the opinion of the court:

The defendant, indicted for the sale of five capsules of heroin to Louis Johnson, brought this writ of error to reverse the judgment of the criminal court of Cook County, wherein he was found guilty by the court of the unlawful sale of narcotic drugs in violation of the Uniform Narcotic Drug Act, and sentenced to the penitentiary for not less than three, nor more than eight, years. Ill. Rev. Stat. 1955, chap. 38, pars. 192.2, 192.23.

Prior to the trial on the merits, the defendant filed a written motion to suppress certain evidence which he alleged had been obtained as the result of an illegal search and seizure in violation of his constitutional rights. After hearing, the court denied the motion and the defendant urges error in this ruling. The defendant testified in support of the motion and also called officers Florian Cecil and Edward De Cuir, of the Chicago police department, as his witnesses. These officers testified that on August 15, 1955, Louis Johnson, who had been a narcotic addict for nine years, was arrested for the crime of burglary; that the police ques-

tioned him concerning the disposition of certain stolen articles and learned that he had, on various occasions, traded them to the defendant for narcotics; that on August 18, 1955, the police, with Johnson's consent and cooperation, set up a plan for a controlled purchase of narcotics from the defendant; that the officers first made certain that Johnson had no narcotics about his person, then supplied him with a marked electric clock which he placed in a box; that they then drove to the vicinity of the defendant's home at 5145 South Dearborn Street and parked their car; that officers Cecil, De Cuir and Gauthreaux walked to the rear of the premises with Johnson; that by prearrangement Johnson was to come out of the house and nod his head when he had "made a buy;" that officer Cecil was stationed near the garage, and officers De Cuir and Gauthreaux remained near the back door; that Johnson entered an enclosed rear porch and then the dwelling proper, and in about five minutes reappeared on the porch accompanied by the defendant, and nodded to officer Cecil, who then shouted "Get him;" that officers De Cuir and Gauthreaux, followed by Cecil, then sprang upon the porch with their revolvers drawn; that officer De Cuir told the defendant to stand where he was, and officer Cecil asked Johnson, who was standing near the steps, if he "had the stuff;" that Johnson replied in the affirmative, produced from his pocket five capsules containing white powder which he handed to officer Cecil, who then asked Johnson: "Where is the electric clock?" and Johnson replied that it was on the kitchen table; and that officer Cecil then told the defendant he was under arrest.

After all the parties had entered the kitchen, the clock was found on the table, and the defendant, who had been clad in a robe, was ordered to dress. When he had done so the police searched him and found two capsules of white powder in the pocket of his trousers. The police, in the defendant's presence, then searched the room adjoining the

kitchen, a dining room which also served as the bedroom of the defendant and his wife, and found thirty-two capsules of white powder in a plastic jar on a dresser, as well as a brown envelope containing white powder. The powder in the various capsules and the envelope was later analyzed by a chemist at the crime laboratory, and it was stipulated at the trial that if the chemist were called to testify, he would state that the powder in all the exhibits contained heroin. The electric clock, the five capsules produced from Johnson's pocket, the two capsules from defendant's pocket, two of the capsules from the jar and the envelope of white powder were all admitted in evidence.

The People contend that the search and seizure were incident to a lawful arrest and that the articles taken in the search were therefore admissible in evidence. The defendant argues that at the time of his arrest, the officers had no reasonable grounds to believe that he had committed an offense; that the arrest without a warrant was therefore unlawful, rendering the search and seizure likewise unlawful and in violation of his constitutional rights. It is the defendant's theory that he was actually arrested by officer De Cuir before officer Cecil had obtained the package from Johnson. The applicable law is not in dispute. A peace officer has the right to arrest without a warrant, for a crime not committed in his presence, when a criminal offense has in fact been committed and he has reasonable grounds for believing that the person to be arrested committed it. (Ill. Rev. Stat. 1955, chap. 38, par. 657; *People v. Kalpak,* 10 Ill.2d 411.) To justify such an arrest, the ground for the belief that an offense had been committed and that the person arrested had committed it, must be such as would influence the conduct of a prudent and cautious man under the circumstances. (*People v. Galloway,* 7 Ill.2d 527, 534; *People v. McGurn,* 341 Ill. 632, 635, 636.) Where the arrest is justified, the accompanying search without a search warrant is also justified, and evidence

taken from the person as a result of that search, if otherwise competent and relevant, is admissible against him. (*People* v. *Kalpak,* 10 Ill.2d 411, 426; *People* v. *Clark,* 9 Ill.2d 400, 404, 405.) The right of search incident to a lawful arrest has been held to extend to the surrounding premises under the possession and control of the defendant, (*United States* v. *Rabinowitz,* 339 U.S. 56, 61, 94 L. ed. 653, 658; *Agnello* v. *United States,* 269 U.S. 20, 30, 70 L. ed. 145, 148; *Carroll* v. *United States,* 267 U.S. 132, 158, 69 L. ed. 543, 553; *People* v. *Heidman,* 11 Ill.2d 501;) including a public business room, (*United States* v. *Rabinowitz,* 339 U.S. 56, 94 L. ed. 653,) the home or dwelling (*Agnello* v. *United States,* 269 U.S. 20, 70 L. ed 145; *People* v. *McGowan,* 415 Ill. 375,) and the vehicle of the person arrested, (*People* v. *Tillman,* 1 Ill.2d 525; *People* v. *Tabet,* 402 Ill. 93,) provided that the search is made at the time of the arrest. (*Johnson* v. *United States,* 333 U.S. 10, 92 L. ed. 436; *Agnello* v. *United States,* 269 U.S. 20, 70 L. ed. 145; *People* v. *Kalpak,* 10 Ill.2d 411.) In this case the only question raised is the legality of defendant's arrest. Assuming that the arrest was lawful the defendant does not question the right of the officers to search him or his home in his presence.

The evidence clearly shows that the officers had the right to arrest the defendant without a warrant. The informer, Johnson, was sent into defendant's home for the express purpose of making a purchase of narcotics from him. Pursuant to plan, he came out and nodded to officer Cecil, who gave the order to move in. Thereafter all three officers entered the porch almost simultaneously. It matters not which officer made the arrest, nor whether it occurred before or after officer Cecil received the package from Johnson. From the time Johnson gave the nod, the officers had reasonable grounds to believe that the offense had been committed by the defendant. After that time, any of the officers had the right to arrest him. We reject the suggestion

that the officer should have made a field test to determine what was in the package furnished by Johnson before arresting the defendant. The law does not impose such precise exactions. It requires only that the officers have reasonable grounds to believe that an offense had been committed and that the arrested party committed it. The officers were in possession of sufficient facts, prior to making the arrest, to cause them, as prudent and cautious men, to take the defendant into custody. The search and seizure incident to the arrest were lawful and the trial court properly overruled the motion to suppress.

The evidence in this case proves the guilt of the defendant beyond a reasonable doubt. The informer, Johnson, positively testified that he traded the clock to the defendant for five capsules of heroin. While Johnson's twin brother testified for the defendant that the informer's reputation for truth and veracity was not good, the conviction does not depend upon the testimony of Johnson alone. The testimony of the officers established that this was a controlled purchase of narcotics which proceeded according to plan. The facts related by them, as well as other circumstances in the case, corroborate Johnson's testimony concerning the sale, and the testimony of the defendant and his wife did not ring true. The defendant denied admitting Johnson to his residence, and stated that he first saw Johnson in the kitchen talking to a roomer when he came from a back bedroom where he and his wife had been attending his invalid mother. He denied knowing Johnson and denied any knowledge of the presence of narcotics in his home, suggesting that they must have belonged to a roomer. But he neither offered an explanation of the presence of the plastic jar of capsules which was found in plain sight on the dresser in his bedroom, nor of why he felt obliged to see Johnson out when he had not admitted him into the house. He testified that he had clothing all over the house; and that the pants which he wore and in which the two

capsules were found were not his, but rather belonged to a roomer. However, he did not explain why he wore them when the officers requested him to dress.

We have examined the record and considered the five enumerated instances of the trial judge's alleged misconduct. While some of the remarks and questions of the trial court may have skirted propriety, we cannot say that they were indicative of prejudice which would prevent a fair and impartial trial. We believe that the case presents a situation for the proper application of the waiver rule and will give no further consideration to this or the other alleged errors assigned here and not presented in the post-trial motions.

In announcing his decision, the trial judge stated that he was not impressed with defendant's testimony. We believe that he was fully justified in that conclusion. The evidence of the People's witnesses, if believed, was sufficient to sustain the judgment, and no valid reason has been presented to cause this court to disturb it.

The judgment of the criminal court of Cook County is affirmed.

*Judgment affirmed.*