(No. 35823.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* MOSE HIGHTOWER, Plaintiff in Error.

*Opinion filed October 31, 1960.*

HOWARD T. SAVAGE, of Chicago, for plaintiff in error.

WILLIAM L. GUILD, Attorney General, of Springfield, and BENJAMIN S. ADAMOWSKI, State's Attorney, of Chi-

cago, (FRED G. LEACH, Assistant Attorney General, and FRANCIS X. RILEY, and EDWARD J. HLADIS, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE DAILY delivered the opinion of the court:

After a bench trial in the criminal court of Cook County, the defendant, Mose Hightower, was convicted of unlawfully possessing and selling narcotic drugs and was sentenced to the penitentiary for a term of not less than twenty nor more than thirty years. He prosecutes this writ of error for review contending that certain money used as evidence was seized in violation of his constitutional rights, and that he was not proved guilty beyond reasonable doubt.

Facts pertinent to defendant's contentions, as developed both at a hearing to suppress the money as evidence and at the subsequent trial, show that on May 19, 1959, Federal narcotics agents Edmund Irvin and Theodore Heisig proposed to Herbert Fohrman, described as a special employee, that he attempt a purchase of narcotics from the occupants of a building at 736 E. 37th Street in Chicago. Fohrman went to the building the same day and was told by Frank Duncan, whom he found there, that he should return the next day at which time Duncan expected to obtain a new supply of heroin from "Cotton," an admitted nickname of defendant. The following morning, about 11:00 A.M., Fohrman was first searched by the agents, then furnished with $55 in currency, the serial numbers of which were recorded. He then returned to the building, arriving about 11:45 A.M., and as he did so his movements were kept under surveillance by agents operating from two cars.

Fohrman was admitted to the building by a woman named Lolita Mallory, and Duncan was seen to enter the building a few minutes later. Within a short time, Fohrman left the building and went to the car of one of the agents where he asked for and was given an additional $15

in currency. He was again searched on this occasion and the serial numbers on these bills were also recorded. Upon his return to the building he gave all of the currency to Duncan and the latter gave it to Lolita Mallory, who left and returned after three hours with a packet of powder that was given to Fohrman. The packet was delivered immediately by Fohrman to the waiting agents and after a field test of its contents showed it to be heroin, Duncan and Mallory were arrested forthwith. They were taken to the Federal narcotics bureau and interrogated. As the result of the information obtained, the agents went to defendant's apartment at 7919 S. Champlain Street, sometime between 1:00 A.M. and 3:00 A.M. on May 21st, and arrested defendant after informing him that the charge was selling narcotics. Defendant admitted the agents to his apartment and in an ensuing search of the premises they found on a bedroom dresser a sum of money which included five one-dollar bills and one five-dollar bill bearing serial numbers corresponding with currency that had been furnished to Fohrman. Defendant's motion to suppress this money as evidence was denied, and it is his initial contention that its seizure without authority of a warrant was in violation of his constitutionl rights.

At the hearing on the motion to suppress, it was admitted that the agents had neither a warrant for defendant's arrest, nor a warrant to search his premises. It was the testimony of Heisig, however, that prior to the time of defendant's arrest, Duncan had given the officers information that defendant was his source of supply, and that he had instructed Lolita Mallory to obtain the heroin here involved from defendant. In addition, Duncan furnished the agent with the telephone number of his supplier, *viz.*, Triangle 4-3289, a number found to be listed in the name of James Kell, 7919 S. Champlain Street, Chicago, and a check of the bureau's records divulged information that

defendant was known to be living at such address under the name of James Kell.

Frank Duncan testified he had agreed, on May 19, 1959, to obtain some narcotics for Fohrman, and that he told the latter on such occasion he "was getting the stuff from Mose Hightower." He related how Fohrman had given him $55, then an additional $15 after leaving for a short period, and testified that he had given all the money to Lolita Mallory with instructions to make a purchase of narcotics. Concluding, the witness said that Mallory returned in about three hours, that she turned over a package of narcotics to Fohrman, and that Fohrman returned in about twenty minutes with two officers who placed the witness under arrest.

According to Lolita Mallory, who corroborated the conversation and transaction of May 20 between Duncan and Fohrman, Duncan gave her the $70 brought by Fohrman and instructed her "to call Triangle 4-3289 and tell Mr. Hightower that he wanted a half ounce of heroin." When she could contact no one at that number, she went to Oakwood Boulevard where she saw defendant's car and followed it in a taxi to the corner of 38th and Ellis Streets. There she told defendant's chauffeur, a man whom she knew as Eddie, that she wanted to buy a half ounce of heroin and was told to wait at the corner until contacted by May Masters. While waiting, the witness went into the nearby apartment of Schuyler Coward, whom she knew to be a friend of defendant, and was present when Coward received a telephone call from defendant. She said she requested and was permitted to speak to the latter, at which time she told him of her wish to buy some heroin and was instructed by defendant to meet May Masters in the original place. When asked if she had ever talked to defendant on the telephone before, Miss Mallory replied: "Yes, I have. I talked to him every day for the last five or six months." In rebuttal, defendant denied that he had talked

to Mallory on May 20, or that he had ever talked with her over the telephone concerning narcotics.

Continuing with the testimony of Lolita Mallory, she related she met May Masters at 38th and Ellis Streets about twenty minutes after defendant's phone call, that she gave her the money and received a package of narcotics which she took back to Fohrman. When cross-examined, she stated she had given a statement to the Federal agents telling them substantially the same things to which she had testified. The record is not clear, however, either from the testimony of the witness or that of agent Heisig, whether the statement to which she referred was made before defendant was arrested.

Since the decision in *United States* v. *Rabinowitz,* 339 U.S. 56, 94 L.ed. 653, it has become an established principle that the premises where an arrest is validly made, under the control of the person arrested, are subject to search without a search warrant, and that such search is not unreasonable within the prohibition of the United States constitution. The same interpretation has been placed on the search and seizure provision of our own constitution. (*People* v. *Boozer,* 12 Ill.2d 184; *People* v. *McGowan,* 415 Ill. 375; *People* v. *Tabet,* 402 Ill. 93; *People* v. *Exum,* 382 Ill. 204.) An arrest without a warrant, such as occurred in this case, is lawful if a criminal offense has in fact been committed and the arresting officer has reasonable grounds for believing that the person to be arrested has committed it. (Ill. Rev. Stat. 1957, chap. 38, par. 657; *People* v. *Fiorito,* 19 Ill.2d 246; *People* v. *La Bostrie,* 14 Ill.2d 617; *Draper* v. *United States,* 358 U.S. 307, 3 L. ed. 2d 327.) The test is not whether there is sufficient evidence to convict the arrested man, but probable cause exists for arrest where a reasonable and prudent man, having the knowledge possessed by the officer at the time of the arrest, would believe the defendant committed the offense. (*People* v. *La Bostrie,* 14 Ill.2d 617; *People* v. *McGowan,* 415 Ill. 375.) If such probable cause

is present, then both the arrest and search are lawful; if not, then both must fall. *People* v. *Fiorito,* 19 Ill.2d 246; *People* v. *Jones,* 16 Ill.2d 569.

From the record in the instant case, it is our opinion that the agents effected a lawful arrest of the defendant. There is no doubt but that a crime was committed, but the decisive issue is whether the agents had reasonable grounds for believing it had been committed by defendant. In his arguments to this court, defendant takes the position that at no time prior to his arrest had any person told the arresting agents that the narcotics had been purchased from him. Such an argument overlooks the true test for probable cause and essential evidence developed at the hearing on the motion to suppress.

When the maneuver for a controlled purchase of drugs was begun on May 19, 1959, Fohrman, according to the testimony of agent Heisig, returned from Duncan's living quarters and told the agent Duncan had stated he would get narcotics from "Cotton," an admitted nickname of defendant, the following day. This was corroborated by Duncan whose testimony was that he told Fohrman to come back the next day, and that he had confided to Fohrman that he "was getting the stuff from Mose Hightower." Duncan in fact delivered the narcotics to Fohrman the next day, and when the former was taken into custody he informed the agents that he had instructed Lolita Mallory to obtain the narcotics in question from defendant. Mallory in turn, corroborated Duncan saying that on his instructions she had telephoned Triangle 4-3289. At the time of his arrest, Duncan likewise furnished the agents with the telephone number of his supplier, and narcotics bureau records disclosed that the number was one listed for a residence maintained by defendant under the alias of James Kell. These circumstances, we believe, afforded probable cause for the agents, as men of reasonable caution, to believe that defendant had committed the offense under investiga-

tion. The arrest being lawful, the subsequent search of defendant's premises was lawful, particularly when it is considered that entry was by defendant's admission, without force or pretext, and that the money seized was in plain view on top of a dresser. (Cf. *People* v. *Heidman*, 11 Ill.2d 501.) The trial court did not err in denying the motion to suppress.

The evidence for the prosecution adduced at the trial of the cause was, except for the hearsay statements made by Fohrman and Duncan to agent Heisig, substantially the same as has been heretofore related. For the defense, Schuyler Coward testified that Lolita Mallory was not at his residence on May 20, 1959, and that she had not at any time talked with defendant from the telephone in the apartment of the witness. He did admit however, that he knew Mallory and that she had been to his quarters on several occasions.

Defendant took the stand in his own behalf and admitted he had known Lolita Mallory, an ex-fiancee, for about ten years, but denied that he had talked to her on May 20, 1959, or that he had ever sold or caused narcotics to be sold to her. He likewise admitted knowing May Masters for about twenty-five years, saying they had once lived together in a hotel, but testified he had not seen her on May 20 or 21. Almost immediately thereafter, however, he stated he had seen her before his arrest, at which time she had paid him either $10 or $15 on a $25 debt she owed him for a television set.

May Masters, seeking to corroborate defendant, testified she had seen him late in the afternoon before his arrest. Her version was that she owed him a balance of $40 on a television set and that she paid him $15 on such occasion. She said she had received the money, described as being a five-dollar bill and a ten-dollar bill, from Lolita Mallory in payment for a pair of shoes the witness had sold to Mallory.

While it is defendant's contention that the evidence in

the record does little more than excite a suspicion of guilt, we are of the opinion there was sufficient evidence, if believed by the court, to prove defendant guilty of a sale of narcotics beyond all reasonable doubt. Where a jury is waived, the credibility of witnesses, the weight to be accorded their testimony and the inferences to be drawn therefrom are matters best determined by the trial judge who saw and heard the witnesses, and his decision in such matters will not be set aside by a reviewing court unless the judgment rests on doubtful, improbable or clearly insufficient evidence. (*People* v. *Pride*, 16 Ill.2d 82; *People* v. *Richardson*, 17 Ill.2d 253.) Here, while there is no evidence of a direct sale by defendant, there is an unbroken chain of circumstances, culminated by the finding of the currency in his apartment, which inexorably establish that defendant did in fact supply the narcotics for the controlled sale which precipitated the charges against him. Such a conclusion is cemented, and all reasonable doubt removed, by Lolita Mallory's testimony of the telephone conversation in which defendant did not disengage himself from the transaction, but approved the terms of the sale and instructed her to meet May Masters as originally directed. It is true that Schuyler Coward contradicted Mallory's testimony in this respect, and it is likewise true that she was an accomplice. The choice between the two witnesses rested with the trial judge, however, and in view of the substantial corroboration of other facets of Mallory's testimony found in the testimony of agent Heisig, Fohrman and Duncan, we cannot say that his choice was in error. In considering all of the evidence, we cannot overlook that defendant and May Masters contradicted each other as to the status of the alleged debt for the television, and that the latter's tesimony with regard to the payment she made in no manner explained defendant's possession of the five one-dollar bills from the controlled currency.

For his final contention defendant asserts there is a

complete lack of proof that he was guilty of possession as charged in count three of the indictment, a contention which brings out the fact that although the report of proceedings reveals the trial court found defendant guilty of only a sale, the common-law record reflects a judgment of guilty, both as to sale and possession. However, since defendant was validly adjudged guilty of a sale of narcotics and the sentence imposed was within the statutory limits provided for such crime, (Ill. Rev. Stat. 1957, chap. 38, par. 192.28—38,) it is unnecessary for us to consider whether the proof was likewise sufficient to establish unlawful possession. *People* v. *Randolph,* 2 Ill.2d 87; *People* v. *Hurt,* 8 Ill.2d 491; *United States* v. *Roviaro,* (7th cir.) 229 F.2d 812; *United States* v. *Sferas,* (7th cir.) 210 F.2d 69.

The judgment of the criminal court of Cook County is affirmed.

*Judgment affirmed.*