(No. 36747.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* WILBERT HARVEY, Plaintiff in Error.

*Opinion filed March 22, 1963.*

MALCOLM M. GAYNOR, of Chicago, appointed by the court, for plaintiff in error.

WILLIAM G. CLARK, Attorney General, of Springfield, and DANIEL P. WARD, State's Attorney, of Chicago, (FRED G. LEACH and E. MICHAEL O'BRIEN, Assistant Attorneys General, and EDWARD J. HLADIS and MARVIN E. ASPEN, Assistant State's Attorneys, of counsel,) for the People.

Mr. CHIEF JUSTICE SOLFISBURG delivered the opinion of the court:

The defendant, Wilbert Harvey, was indicted in the criminal court of Cook County on the charge of selling, possessing and dispensing a narcotic drug. He pleaded not guilty and, after waiving a jury, was tried by the court, found guilty of the unlawful sale of narcotics and sentenced to a term in the penitentiary of not less than 10 years nor more than 11 years. He prosecutes this writ of error from that judgment.

Prior to the trial on the merits, the defendant filed a written motion to suppress $9 in U.S. currency taken from his home which he alleged had been obtained as the result of an illegal search and seizure in violation of sections 6 and 10 of article II of the constitution of the State of Illinois. After hearing, the court denied the motion, and the defendant urges error in this ruling.

The record discloses that James Donnelly, a police officer assigned to the Narcotics Unit of the Detective Bureau, saw Charles Alexander, a police informer, at the Narcotics Unit office on the morning of February 5, 1959.

Alexander informed Donnelly that he could make a purchase of narcotics at 4634 South Drexel Avenue from an unknown colored man who lived in the basement. Donnelly prepared a list of serial numbers of United States currency. Donnelly, his three partners, and Alexander signed the list, and after searching Alexander, Donnelly gave the money to Alexander. The four officers and Alexander then went to the building at 4634 Drexel where Alexander was let out of the car and entered the building. Alexander, according to his testimony on the motion, proceeded to apartment 5-B, knocked on the door and was admitted by the defendant who was alone at the time. Alexander gave the defendant $10. The defendant stepped out into the hall, came right back and gave Alexander two little silver paper wrappers. Alexander then left the apartment as another man was coming in and delivered the two silver paper wrappers to officer Donnelly who opened one of them and found it to contain white powder. He performed a preliminary test and ascertained that it contained a derivative of opium.

Alexander then informed the officer of the room number and gave them a description of the person from whom he had made the purchase and the other occupant of the room. The four officers then went to apartment 5-B and knocked on the door which came open. They entered the room and placed the defendant under arrest. The officers searched the defendant and the other occupant and made a search of the room which was approximately 10 feet by 10 or 12 feet. Donnelly first searched the bed, a dresser, a kitchen cabinet, gas stove and all of the furniture. There were six people in the room at the time and Donnelly had his partners take the defendant into the hall right outside the room. Donnelly then returned to the room by himself and proceeded to move the furniture to one side of the room and tear up the linoleum rug. He then moved the furniture back to the other side of the room and tore up the

linoleum where he found the listed money about 3 feet from the wall.

The constitution of the State of Illinois does not prohibit all searches, but only those which are unreasonable. The question of what is a reasonable search following a valid arrest depends on the surrounding facts and circumstances of each individual case. As we stated in *People* v. *Watkins,* 19 Ill.2d 11, at page 18; "The critical issue in each case must be whether the situation that confronted the officer justified the search. That question can not be determined by an indiscriminate application of legal concepts that were evolved to meet quite different problems."

The defendant does not challenge the validity of the arrest. He also concedes the well-established rule that a search incident to an arrest is authorized when reasonably necessary to protect the arresting officer from attack, to prevent the prisoner from escaping, or to discover the fruits of the crime. *People* v. *Alexander,* 21 Ill.2d 347, 352; *People* v. *Burnett,* 20 Ill.2d 624, 625; *People* v. *Watkins,* 19 Ill.2d 11, 18; *People* v. *Heidman,* 11 Ill.2d 501, 508.

It is likewise well settled that an officer making a lawful arrest has the right not only to search the person arrested, but also to search an area within his immediate control, including the premises in which such person has been arrested. *Abel* v. *United States,* 362 U.S. 217, 4 L. ed. 2d 668; *United States* v. *Rabinowitz,* 339 U.S. 56, 94 L. ed. 653; *People* v. *Van Scoyk,* 20 Ill.2d 232; *People* v. *Tillman,* 1 Ill.2d 525; *People* v. *McGowan,* 415 Ill. 375.

The defendant relies mainly on the case of *People* v. *Alexander,* 21 Ill.2d 347, where, as a result of transactions which took place on July 8, 1959, an arrest warrant was issued, and in September, 1959, narcotics agents arrested defendant in her apartment. They had no search warrant. After the arrest, seven agents undertook a complete search of the defendant's apartment. They searched every portion

of every room in the apartment and "finally ripped up some linoleum on the floor of a closet and ripped up some boards in the floor and found the narcotics." In that case we held that the search was far more extensive than the limited search which is permissible as an incident to a lawful arrest. While both cases involve the search of an apartment and the removal of linoleum during the searches, there is a significant difference aside from the extent of the search. In the *Alexander* case the arrest was made for an offense committed two months previously, and the search was not for the fruits of the crime, but for incriminating evidence. In the present case the arrest and search were made on the premises where the crime had been committed and which were under the immediate control of the person arrested, minutes after the crime had been committed, and for the sole purpose of discovering the fruits of the crime.

Defendant also refers to *People* v. *Burnett,* 20 Ill.2d 624, where the defendant was convicted of unlawful possession of obscene photographs. The facts showed that a deputy coroner and three officers went to the defendant's apartment. The officers waited outside while the coroner went in. Two nude women performed a lewd show in exchange for $20. After 30 minutes, the officers knocked and were admitted by one of the nude women. They arrested the two women and found the defendant in another room with one of two marked $10 bills sticking out of his pocket. The defendant was arrested and a search of the apartment was then made. A tin box containing obscene photographs was found in a bedroom closet. In reversing the conviction on the grounds of illegal search and seizure we carefully pointed out the distinction between that case and *People* v. *Van Scoyk,* 20 Ill.2d 232, stating, at page 625: "There is nothing in the record to indicate that a search of the tin box, which was locked and tucked away in the closet, was reasonably necessary to protect the officers or to prevent defendant's escape. In addition, all the evi-

dence had been gathered which would tend to prove or to connect defendant and the two women with the offense for which they had been arrested. This readily distinguishes the case from *People* v. *Van Scoyk*, 20 Ill.2d 232. * * * In the *Van Scoyk* case $20 in marked bills were given to defendant, an alleged prostitute. After arresting her, the officers made a search for the bills and came upon a quantity of pornographic material."

In the case at bar we feel the facts are far more similar to *People* v. *Van Scoyk*, 20 Ill.2d 232, where we held, at page 235: "It is clear that subsequent to this lawful arrest, the police officers had the right to make a search of the immediate area to find the fruits of the crime, the marked ten-dollar bills. The officers found the marked money and the pornographic material in the same drawer. Such material, revealed by a search of the immediate premises under control of defendant subsequent to a legal arrest, may be properly seized and used as evidence."

Decisions, both in this court and in the Supreme Court of the United States, have firmly established the proposition that a search of the premises where the arrest is made and which is under the control of the accused, immediately subsequent to and incidental to a lawful arrest, in order to find and seize the fruits of the crime, is not a violation of constitutional rights. *People* v. *Van Scoyk*, 20 Ill.2d 232; *People* v. *McGowan*, 415 Ill. 375; *People* v. *Tillman*, 1 Ill.2d 525; *United States* v. *Rabinowitz*, 339 U.S. 56; *Abel* v. *United States*, 362 U.S. 217; Anno. 4 L. ed. 2d 1982.

Under the foregoing authorities we conclude that, following the lawful arrest of the defendant, the search of the premises in which the crime had been committed only minutes previously in order to find and seize the marked and listed money (the fruits of the crime) was reasonable, and that the evidence was lawfully seized and properly admissible.

The defendant next contends that the People failed to adduce evidence from which the trial court could find, beyond a reasonable doubt, that the substance allegedly sold by the defendant was in fact heroin as charged by the indictment. His main point of argument is that there was a failure to adequately prove continuity of possession.

Alexander had testified that defendant gave him "two little silver paper wrappers," also referred to by Alexander as "two little silver packs", and that he gave them to officer Donnelly. Donnelly testified that he received "two packages, silver foil packages" from Alexander, also referred to by him as "two small silver packages", and that he took them to the crime laboratory and next saw them when he picked them up from the custodian the day before trial, and kept them in his possession until trial. It was stipulated that if Charles Vondrak, a chemist of the Chicago Police Scientific Crime Detention Laboratory were to testify, he would testify that on February 6, 1959, Donnelly submitted "two small foil packets" to the laboratory for examination and that one contained .25 grams of white unknown powder; that it was subjected to various chemical tests, and that it was diacetyl morphine hydrochloride, commonly referred to as heroin.

The basis for defendant's contention is that the various terms quoted above were all used by the different People's witnesses in describing the packages of heroin, and therefore they could have been referring to three different items. It is the theory of the People that these objections are semantic, not substantive in nature. To determine the merits of this contention, we have carefully examined the entire record before us, and from such examination we are fully satisfied that the requirement of continuity of possession has been met. The testimony of the witnesses, as well as the descriptive terms used in referring to the packages of heroin, adequately trace the packages from the defendant to Alexander, from Alexander to officer Donnelly,

from Donnelly to Charles Vondrak. The packages were further identified by Donnelly at the trial. Continuity of possession was fully established. *People* v. *Judkins*, 10 Ill.2d 445.

For the reasons stated, the judgment of the criminal court of Cook County is affirmed.

*Judgment affirmed.*