People of the State of Illinois, Plaintiff in Error, v. Louis Panozzo, Defendant in Error.

Gen. No. 49,489.

First District, First Division.
April 27, 1964.
Rehearing denied May 27, 1964.

William G. Clark, Attorney General, of Springfield (Daniel P. Ward, State's Attorney, of Chicago, Fred G. Leach and E. Michael O'Brien, Assistant Attorneys General, Elmer C. Kissane and Matthew J. Moran, Assistant State's Attorneys, of counsel), for plaintiff in error.

Warren D. Wolfson and Dean S. Wolfson, of Chicago, for defendant in error.

MR. PRESIDING JUSTICE MURPHY delivered the opinion of the court.

This is an appeal by the People from an order sustaining defendant's motion to suppress evidence. The question presented is the reasonableness of a search and seizure made in defendant's home, incident to a valid arrest, but without a search warrant.

The controlling facts are not disputed. Defendant and two associates were indicted for the robbery of Richard Tebodo on February 15, 1963. The second count charged the defendants with theft, in that they knowingly obtained unauthorized control of stolen property, to-wit: $50 in United States currency, 25 watches and 60 rings, all the property of Richard Tebodo.

Prior to trial, a written motion to suppress was filed by the instant defendant. The only witness heard was a police officer, who testified that on February 27, 1963, at 2:30 p. m., an arrest warrant was served upon defendant. The arrest warrant, issued two or three days earlier, charged that defendant unlawfully received three vacuum cleaners and a typewriter or appliances stolen on December 24, 1962, more than two months before the arrest. Defendant was arrested in the kitchen of his five-room one-story residence. The police officers then searched the kitchen, found nothing, and after walking through two rooms, the dining room and living room, searched a front hall closet, where they found diamond rings taken in a recent robbery, the subject of the instant motion to suppress.

Defendant contends that "although the defendant was lawfully arrested, the search of his home that followed far exceeded the limitations on the right of search prescribed by the constitutions of the United States of America and the State of Illinois. The right of the police to make a search incident to a lawful arrest does exist, but in this case the search went beyond the requirements of reasonableness and the reasons for the existence of the right." Defendant makes no claim that the property found in his home cannot be admitted because it was not the property sought. "That is not our point. The police had no

386

■■■■■■■■■■■■

right to delve into [defendant's] closet. An unlawful search cannot be justified by what is found. A search that is lawful [sic] when it begins is not made lawful by the discovery. People v. Scaramuzzo, 352 Ill 248, 185 NE 578 (1934); United States v. DiRe, 332 US 581 (1948). After all, 'It was against such prying, on the chance of discovery, that the constitutional amendment was intended to protect the people.' United States v. Slusser, 270 F 818, 819 (1921)."

The People primarily rely on Harris v. United States, 331 US 145, 154 (1947); People v. Harvey, 27 Ill2d 282, 285, 189 NE2d 320 (1963); People v. Hightower, 20 Ill2d 361, 368, 169 NE2d 787 (1960).

The question here presented, "the reasonableness of a search without a search warrant, incident to a valid arrest," has been so thoroughly discussed in the foregoing authorities and others, we do not believe it necessary to dwell upon the two competing philosophies, each of the highest and most obvious importance—"those involving the constitutional protections against unreasonable searches and seizures . . . ," and "on the other hand, the interest of the community in effective enforcement of the criminal law . . . ." Allen, the Wolf Case: Search and Seizure, Federalism and the Civil Liberties, 45 Ill Law Review 1, 3 (1950).

In the light of the competing values, the cases have not necessarily been consistent, and each case must be decided upon its own facts and circumstances. Go-Bart Importing Co. v. United States, 282 US 344, 357 (1931); and as stated in People v. Harvey, 27 Ill2d 282, at page 285, 189 NE2d 320:

> "The critical issue in each case must be whether the situation that confronted the officer justified the search. That question can not be determined by an indiscriminate application of legal concepts

387

that were evolved to meet quite different problems."

The instant record indicates the trial court relied on People v. Alexander, 21 Ill2d 347, 172 NE2d 785 (1961), in which defendant was arrested by narcotics agents without a search warrant, and the two agents proceeded to completely search the defendant's apartment. Every portion of every room was searched. Linoleum and boards in the floor were ripped up, and narcotics were found. The search was held to be unreasonable because it "was far more extensive than the limited search which is permissible as an incident to a lawful arrest." However, in People v. Harvey, for reasons significant in the present case also, the Alexander case was distinguished (p 286):

> "In the Alexander case the arrest was made for an offense committed two months previously, and the search was not for the fruits of the crime, but for incriminating evidence. In the present case the arrest and search were made on the premises where the crime had been committed and which were under the immediate control of the person arrested, minutes after the crime had been committed, and for the sole purpose of discovering the fruits of the crime."

And, again on page 287:

> "Decisions, both in this court and in the Supreme Court of the United States, have firmly established the proposition that a search of the premises where the arrest is made and which is under the control of the accused, immediately subsequent to and incidental to a lawful arrest, in order to find and seize the fruits of the crime, is

388

not a violation of constitutional rights. People v. Van Scoyk, 20 Ill2d 232; People v. McGowan, 415 Ill 375; People v. Tillman, 1 Ill2d 525; United States v. Rabinowitz, 339 US 56; Abel v. United States, 362 US 217; Anno 4 L Ed2d 1982."

We believe all of the foregoing remarks are substantially in point here. Although the arrest of the defendant was based on an offense committed two months previously, the search was incident to a lawful arrest "and for the sole purpose of discovering the fruits of the crime," and not "for incriminating evidence," which characterizes People v. Alexander and similar cases, where the arrest was termed "a pretext to search for evidence." (United States v. Lefkowitz, 285 US 452, 467 (1932).) The warrant of arrest, issued two days prior to defendant's arrest, identified "the fruits of the crime" to be household appliances of such a nature as would be found in a household closet. The record indicates it was a visual search, made in a five-room apartment in the exclusive possession of defendant. We think it is irrelevant that the search was made in the front closet after the arrest had been made in the kitchen. In Harris v. United States, 331 US at page 152, the court said:

"Nor can support be found for the suggestion that the search could not validly extend beyond the room in which petitioner was arrested. Petitioner was in exclusive possession of a four-room apartment. . . . But the area which reasonably may be subjected to search is not to be determined by the fortuitous circumstances that the arrest took place in the living room as contrasted to some other room of the apartment."

389

Finally, defendant contends that "no urgency of time existed in the case at bar. The officers held the arrest warrant for two or three days. . . . there was no showing of any kind that the police officers could reasonably believe the appliances were or ever had been on [defendant's] premises. If there were such a belief, and if it were based on evidence, there was more than sufficient time to present it to a judicial officer." Cited are cases in which the Illinois Supreme Court affirmed the right of incidental search (People v. Boozer, 12 Ill2d 184, 145 NE2d 619 (1957); People v. Van Scoyk, 20 Ill2d 232, 170 NE2d 151 (1960); People v. Hightower, 20 Ill2d 361, 169 NE2d 787 (1960)) only where "the search coincided closely in time with the commission of the crime," and to show when urgency presents itself and a lawful arrest is made, "if the situation demands, he may search for the fruits of the crime just committed. But, absent this urgency, he may not search one's home without a search warrant issued by an impartial judicial officer after hearing evidence."

We believe this contention is answered in United States v. Rabinowitz, 339 US 56 (1950), where the court discussed at length the reasonableness of a search without a search warrant, incident to a valid arrest. The court there said (pp 65–66):

> "A rule of thumb requiring that a search warrant always be procured whenever practicable may be appealing from the vantage point of easy administration. But we cannot agree that this requirement should be crystallized into a sine qua non to the reasonableness of a search. It is fallacious to judge events retrospectively and thus to determine, considering the time element alone, that there was time to procure a search warrant.

. . . Some flexibility will be accorded law officers engaged in daily battle with criminals for whose restraint criminal laws are essential. . . . The relevant test is not whether it is reasonable to procure a search warrant, but whether the search was reasonable. That criterion in turn depends upon the facts and circumstances—the total atmosphere of the case. It is a sufficient precaution that law officers must justify their conduct before courts which have always been, and must be, jealous of the individual's right of privacy within the broad sweep of the Fourth Amendment."

Applying what we conclude to be the relevant test— "whether the search was reasonable"—to the "facts and circumstances—the total atmosphere of the case," it is our opinion that the instant search was reasonable.

We conclude the trial court was in error in sustaining defendant's motion to suppress. The order of the trial court is reversed and the cause is remanded for further proceedings not inconsistent with the views expressed herein.

Reversed and remanded with directions.

BURMAN, J., concurs.

KLUCZYNSKI, J., dissents.