**People of the State of Illinois, Plaintiff-Defendant in Error, v. Thurman Wyatt, Defendant-Plaintiff in Error.**

**Gen. No. 50,356.**

First District, Second Division.
September 21, 1965.

Holland C. Capper, of Chicago, for defendant-plaintiff in error.

Daniel P. Ward, State's Attorney of Cook County, of Chicago (Elmer C. Kissane, Albert J. Armonda, and James B. Klein, Assistant State's Attorneys, of counsel), for plaintiff-defendant in error.

MR. JUSTICE LYONS delivered the opinion of the court.

This is an appeal from a conviction for the unlawful sale of narcotics and a sentence for a period of ten years to life in the penitentiary. Defendant waived a jury trial.

On November 9, 1959, about 8:45 p. m., Ernest Salone, Samuel Patch and Carl Henry, all State Narcotics Inspectors, went to the basement apartment of informer Elsie Brooks at 5157 South Michigan Avenue. Upon defendant Thurman Wyatt's arrival at approximately 11:00 p. m., Salone asked him "if he had brought the heroin" and defendant said "yes." Defendant and Brooks went toward the bathroom where a few minutes later, Inspector Henry, while secreted in a closet, heard defendant ask Brooks whether Salone had the money. Defendant asked Brooks, "What is this? Why can't we do business the regular way? I want to do business directly with you because this is a lot of money involved." Then he told Brooks to get Salone. Brooks told Salone to come to the bathroom. Salone proceeded there, and after receiving a manila envelope from Brooks, gave one hundred and fifty dollars ($150) to defendant, who counted the money. While handing the defendant the money, Salone said, "here's your money—is the 'stuff' okay?" Defendant answered, "yes, you'll be satisfied with the percentage." Upon being asked whether Salone could get two more ounces of heroin that Monday, defendant told him to call Brooks, and then he left.

Salone took the manila envelope to 50th and Indiana, where at about 11:40 p. m., he met Charles Casey, a Federal Narcotics Agent, who field-tested the contents and found it to be heroin.

On November 24, 1959, at 5226 South Drexel, defendant was arrested and admitted taking the money

from Salone. He denied making this admission at the trial.

It is defendant's contention that there is insufficient evidence in the record to support a conviction. Defendant alleges that the corpus delicti of the crime of unlawfully selling narcotics to another was not proven beyond a reasonable doubt as there was insufficient evidence introduced that a sale of narcotics took place. Defendant's argument rests on the premise that no direct evidence was introduced that defendant gave the manila envelope to Brooks; that there is a discrepancy in the testimony concerning the envelope which was transferred from Inspector Salone to Inspector Casey; and that an improper foundation was laid for the introduction of the envelope as an exhibit. Defendant's position in essence is that there is insufficient evidence to show continuity of possession and control of the envelope from defendant to its introduction as Peoples Exhibit No. 3.

It is the State's position that the State proved beyond a reasonable doubt that defendant unlawfully sold narcotics to Inspector Salone.

■ ■ This is not a situation where an informer's testimony has to be corroborated by surveillance, immediate arrest, or arrest with marked money. In the instant case, Inspector Salone was a party to the transaction. It was, however, a three sided transaction. There is direct evidence that Brooks gave the envelope to Inspector Salone and that Salone in turn gave money to defendant. Two sides of the transactions were proven. It is true that there is no direct evidence showing that defendant transferred the envelope to Inspector Salone. The surrounding circumstances, however, show that a transaction took place between defendant and Inspector Salone through Brooks, the middleman. Three Narcotics Inspectors were aware that defendant and Brooks went into a

bathroom. Inspector Henry heard defendant ask Brooks whether Salone had the money. Inspector Patch heard defendant say, "What is this? Why can't we do business the regular way. I want to do business with you because this is a lot of money involved." Inspector Salone came to the bathroom and after receiving a manila envelope from Brooks gave $150 to defendant and stated to him "here's the money. Is the 'stuff' okay?" Defendant answered, "yes, you will be satisfied with the percentage." He then counted the money. As was stated in People v. Aldridge, 19 Ill2d 176 at 179, 166 NE2d 563 (1960):

> Under the broad reach of this definition it is not necessary to trace title to the drug with technical nicety in order to establish an unlawful sale. Nor does one who is proved to have participated in some capacity forbidden by the statute escape guilt because the proof does not fix with certainty the particular capacity in which he acted. Proof that a person participated in a transaction as principal, agent, servant, or employee is sufficient. Cf. People v. Glass, 16 Ill2d 595, 597; People v. Shannon, 15 Ill2d 494, 496.

Defendant's contention that People v. Boyd, 17 Ill2d 321, 161 NE2d 311 (1959) is applicable to the instant situation is unfounded. In that case, no narcotics inspector was present. The court reversed the conviction because it rested on the uncorroborated testimony of Andrews and Vancelara, both of whom were drug addicts. Defendant's contention that People v. Connie, 52 Ill App2d 221, 201 NE2d 641 (1964), is applicable to the instant situation is likewise unfounded. In that case the court held that the State must prove that no one other than the defendant is responsible for the presence of the narcotics. That case is distinguishable from the case at bar, first be-

cause the conviction was for the unlawful possession rather than the unlawful sale of narcotics, and second, because the facts in that case are not analogous to the instant situation.

■ Defendant also contends that another vital link in the chain of possession of the narcotics was not established at the trial in that the envelope given Inspector Salone by Brooks was described by Salone as being yellow, and that Agent Casey, who received the envelope from Salone, testified that it was brown. We disagree with defendant's contention. The slight difference in opinion of Inspector Salone and Agent Casey, as to the particular color or shade of the manila envelope, is insignificant. People v. Harvey, 27 Ill2d 282, 288, 189 NE2d 320 (1963).

■ Defendant also claims that there is a gap in the chain of possession between Agent Casey and the Testing Chemist, Mr. Endriz. This contention is likewise unfounded. After the field test, Agent Casey transferred the white powder into a glassine bag and then transferred both the glassine bag and the manila envelope into a U. S. Treasury Department Bureau of Narcotics envelope. He placed his initials on the exhibit. On November 10th he delivered the envelope and its contents to Endriz for analysis. Endriz received the envelope and put his initials on it. The technique for preserving this exhibit and its foundation for its admittance into evidence were sufficient.

■ After a careful examination of the record, we hold there was sufficient evidence to show continuity of possession and control from defendant to the introduction of the envelope as Peoples Exhibit No. 3. The judgment is affirmed.

Judgment affirmed.

BURKE, P. J. and BRYANT, J., concur.