The People of the State of Illinois, Defendant in Error,
v. Charles Fischetti, Plaintiff in Error.

Gen. No. 36,665.

Opinion filed December 29, 1933.   Rehearing denied
January 10, 1934.

TYRRELL A. RICHARDSON, for plaintiff in error.

THOMAS J. COURTNEY, State's Attorney, for defend-
ant in error; EDWARD E. WILSON, GRENVILLE BEARD-
SLEY, ALBERT WOLL and CHARLES S. DOUGHERTY, As-
sistant State's Attorneys, of counsel.

MR. JUSTICE SCANLAN delivered the opinion of the
court.
    Defendant was charged, in the municipal court of
Chicago, with the offense of carrying a concealed wea-

pon upon his person, in violation of the Deadly. Weapons Act (Cahill's Ill. Rev. St. 1931, ch. 38, ¶ 141). He was tried and found guilty by a jury, and was sentenced by the court to serve one year in the House of Correction and to pay a fine of $300 and costs.

Fischetti was arrested without a warrant by two Chicago police officers, Drury and Howe, on November 1, 1932, while he was standing in a corridor outside the door of an office on the fourteenth floor of No. 1 North LaSalle street, in Chicago, and was committing no offense. He was in the company of one Murray Humphreys, who was later charged, tried and found guilty, by a jury, of the offense of carrying a concealed weapon upon his person. Humphreys sued out a writ of error to the Supreme Court, where the judgment against him was reversed. (See *People v. Humphreys*, 353 Ill. 340.) Immediately after Humphreys and Fischetti were arrested they were searched, and the two officers testified that they found a loaded revolver upon each. They also testified that they had no warrant against Fischetti in their possession when they arrested him but that they knew a vagrancy warrant had been issued against him by Judge Lyle in 1930. Officer Drury testified that on November 29, 1930, he and Howe were called to the office of chief of detectives Norton and there given a list of persons against whom warrants had been issued; that Norton showed them the warrant against Fischetti but that he (Drury) did not see it at any time thereafter, nor did he see Fischetti until he arrested him; that at the time of the arrest he "knew there was a warrant for his (Fischetti's) arrest at the Bureau." The People's evidence does not show when or where the warrant was served upon Fischetti. Howe testified that he did not read the warrant to defendant and did not know when it was served. Drury testified that he did not serve the warrant and he "believed the warrant was

served by Shoemaker," chief of detectives in November, 1932, at the detective bureau; that "the warrant is always served after the arrest and search." Norton, chief of detectives in 1930, the only other witness for The People, testified that he knew nothing about the service of the warrant. While this evidence does not show that the warrant was ever served, defendant's counsel stated to the court that it was served on defendant several days after the arrest.

Defendant has argued numerous grounds in support of his contention that the judgment should be reversed, but in the view we have taken of the case it will be necessary for us to consider one only.

Before the trial commenced defendant filed a petition and motion to suppress all evidence of his arrest and search and of the finding of the revolver upon him, on the ground that the arrest was illegal and the search of his person and seizure of the revolver violated the rights guaranteed to him by the constitution of Illinois. The trial court held that he would pass on the motion to suppress at the time the revolver was offered in evidence. During the trial the prosecution offered the revolver and bullets in evidence and after the officers had testified, out of the presence and hearing of the jury, the court overruled defendant's motion and denied the petition to suppress, and admitted the revolver and bullets in evidence. Defendant contends that the court erred in so ruling. We have heretofore stated, in substance, the material evidence given by the officers upon the motion. The People also offered the warrant against defendant issued in September, 1930. No evidence was introduced by defendant.

Paragraph 681 of the Criminal Code, Cahill's St. ch. 38, reads as follows:

"Arrests without warrant.) Sec. 4. An arrest may be made by an officer or by a private person without

warrant, for a criminal offense committed or attempted in his presence, and by an officer, *when a criminal offense has in fact been committed,* and he has reasonable ground for believing that the person to be arrested has committed it."

In *People v. Doody,* 343 Ill. 194, 204, the court said: *"This section has had the consideration of the court in numerous cases. It needs no construction and it has always been enforced according to its terms.* An officer making an arrest without a warrant and without the authority conferred by statute to arrest without a warrant is a trespasser and the person whom he attempts to arrest may resist with all the force necessary to repel his efforts (*North v. People,* 139 Ill. 81; *Rafferty v. People,* 72 id. 37; *People v. Scalisi,* 324 id. 131; *People v. McGurn,* 341 id. 632.) On the other hand, when a criminal offense has in fact been committed and an officer has reasonable grounds for believing that the person to be arrested had committed the offense, he is expressly authorized to arrest that person without a warrant and his authority is the same as if he held a warrant commanding him to make the arrest. (*Cahill v. People,* 106 Ill. 621; *Lynn v. People,* 170 id. 527.) Whether or not the officer had reasonable ground for believing that the person to be arrested had committed the offense is a mixed question of law and fact, the circumstances to show it reasonable being the fact and their sufficiency when shown being a question of law. *Kindred v. Stitt,* 51 Ill. 401." (Italics ours.)

(See also *People v. Johnson,* 286 Ill. 108; *People v. Estes,* 303 Ill. 602; *People v. Kissane,* 347 Ill. 385, 388–9, affirming *People v. Kissane,* 261 Ill. App. 621; *People v. Scalisi,* 324 Ill. 131, 146, and *People v. McGurn,* 341 Ill. 632.) From the plain letter of the statute and the decisions of the Supreme Court in relation thereto, it is clear that in order to justify the arrest of

Fischetti and the search and seizure it was necessary for the prosecution to prove, upon the motion to suppress, that "a criminal offense (vagrancy) had in fact been committed." This they failed to do. An indictment or information is a mere formal charge and is no evidence tending to prove the charge, and it would be, of course, idle to argue that the warrant made out a *prima facie* showing that the offense of vagrancy had, in fact, been committed. The People did not see fit to offer the complaint upon which the warrant was issued. Indeed, the offer of defendant to show that upon his motion, made after his arrest, the complaint was quashed, was not allowed by the trial court, upon objection by counsel for The People, as was also the further offer of defendant to show that he was discharged upon the vagrancy complaint, the court ruling that anything that took place in the proceedings against defendant for vagrancy was not material to the instant charge. We do not wish to be understood as intimating that a quashing of the complaint, or a discharge of defendant in the vagrancy proceeding, would prove that the offense of vagrancy had not been, in fact, committed. We are holding that, under the statute, The People, upon motion to suppress, were obliged to prove that the criminal offense of vagrancy had been, in fact, committed. Counsel for The People argue, rather feebly, that the officers had reasonable grounds for believing that the criminal offense of vagrancy had been committed and that this was sufficient, under the statute, and they cite, in support of this argument, *People v. Kissane, supra.* In that case, as appears from our opinion (p. 628), the defendant conceded that the Lake View bank had been robbed. In view of the plain language of the statute this argument of The People is an idle one.

The major contention of The People is that the warrant was "sufficiently" in the possession of Howe

and Drury; "it was at the time of the arrest in the Detective Bureau of the City of Chicago; the officers were police officers of the City of Chicago, assigned to that bureau; the warrant was directed to all police officers of the city. . . . The warrant . . . was sufficiently in the possession of the arresting officers, who had seen it exhibited to them and who had been directed by the Chief of Detectives to arrest the person named in such warrant." No case is cited in support of this contention and it is a sufficient answer to it to say that the doctrine of constructive possession of a warrant has frequently been condemned. The People argue that "law should be applicable to the habits and conditions of our society and should be adapted to changes brought by time and circumstances," and that unless we sustain the instant contention the police department, in many cases, will be practically powerless to make arrests. This argument is not a proper one to make to this court. We have no power to change or modify the law, and we would not knowingly misinterpret it even though we were of the opinion that it unduly limits the power of officers to make arrests. If the statute is not sufficient to meet the present conditions of society, as The People argue, it is for the legislature to make changes in the same. However, we cannot agree with counsel's argument that the statute, which has been on the statute book for half a century, is a weak law. While it is a bulwark that protects a citizen from illegal arrest and incarceration, nevertheless, it gives greater power to police officers to make arrests than is possessed by like officials in many of the other states. At common law, and under the statutes of many of the sister states, an officer has no authority whatever to arrest for a misdemeanor without a warrant, unless the offense is committed in his presence, but under our statute (par. 681, Criminal Code) a police officer, "when a criminal offense has in

fact been committed, and he has reasonable ground for believing that the person to be arrested has committed it,'' may make an arrest without a warrant and search the arrested party without a search warrant. As stated by our Supreme Court:

"The term 'criminal offense' in paragraph 681 must be held to include misdemeanors as well as felonies, *and thereby the right of officers to make arrests is much greater than at common law."* (*People v. Scalisi, supra,* p. 147.)

The testimony of chief of detectives Norton shows how simple it was for the police department to function under the act. When, in November, 1930, Norton received a large number of vagrancy warrants that had been issued by Judge Lyle, he caused ''lists'' to be made of the warrants, and then sent for officers Drury and Howe and furnished them with one of the ''lists,'' at the same time showing them the warrants in his possession and ordering them to bring in the defendants. It is a reasonable inference, from the evidence, that Norton sent for other officers and followed the same plan as to them. Under this method Drury and Howe had the right to arrest and search Fischetti if the criminal offense of vagrancy had been, in fact, committed. The fatal defect in The People's case is not due to the absence of a warrant at the time of the arrest, but solely to the inability or failure of the prosecution to prove the vagrancy charge. Had that charge been proved, the facts in evidence would have justified a finding that the officers had reasonable grounds for believing that Fischetti had committed it. Under the record in this case, we must hold that the arrest of defendant was illegal and the search of his person and the seizure of the revolver in violation of his constitutional rights, that the court should have granted defendant's petition and suppressed the evidence unlawfully obtained, and that the court erred

in admitting in evidence the loaded revolver obtained as the result of such search and seizure. As stated by our Supreme Court in *People v. Humphreys, supra* (p. 345):

"The test is not that the officers found a gun upon Humphreys. That a gun was found did not change the wrongful arrest and search into a right. The constitutional guaranty must be applied to all alike, and if an arrest and search under the circumstances here is upheld, then the one barrier designed to protect persons from unlawful invasions of their persons and property would be destroyed."

The judgment of the municipal court of Chicago is reversed and the cause is remanded.

*Reversed and remanded.*

SULLIVAN, P. J., and GRIDLEY, J., concur.