(No. 32664.— )

THE PEOPLE OF THE STATE OF ILLINOIS; Defendant in Error, *vs.* EDWARD TILLMAN, Plaintiff in Error.

*Opinion filed November 18, 1953—Rehearing denied Jan. 18, 1954.*

526

MAXWELL, J., dissenting in part and specially concurring in part.
KLINGBIEL, J., dissenting.

CHARLES B. EVINS, of Chicago, (HOWARD T. SAVAGE, and HEBER T. DOTSON, of counsel,) for plaintiff in error.

LATHAM CASTLE, Attorney General, of Springfield, and JOHN GUTKNECHT, State's Attorney, of Chicago, (SAMUEL PAPANEK, JOHN T. GALLAGHER, RUDOLPH L. JANEGA, and ARTHUR MANNING, all of Chicago, of counsel,) for the People.

Mr. JUSTICE BRISTOW delivered the opinion of the court:

After a trial without a jury, in the criminal court of Cook County, defendant, Edward Tillman, was found guilty of the crime of unlawfully possessing narcotic drugs. He was convicted and sentenced under the second count of the indictment, which charged him, in addition, with having been previously convicted of a similar offense and having been sentenced therefor by the municipal court of Chicago to confinement in the Chicago House of Correction for a period of six months. For the present offense defendant was sentenced to the penitentiary for a term of not less than fifty years nor more than life. He brings the record to this court for review by writ of error.

Defendant contends, first, that the court erred in denying his motion to quash count II of the indictment, on the ground that the statute requires the previous conviction to be for a felony, before the penalty for a subsequent offense can be imposed. Section 23 of the Uniform Narcotic Drug Act, under which defendant was convicted, relates to penalties for violations and subsequent offenses. It provides, in so far as it is relevant, that "Whoever violates this Act by possession, having under his control, manufacturing or compounding any narcotic drug shall be fined for the first offense not more than $5000, or be imprisoned for a period of not less than one year nor more than five years, or both. For any subsequent offense the violator shall be imprisoned in the penitentiary for any term from two years to life. * * * Any offense under this Act shall be deemed a subsequent offense if the violator shall have been previously convicted of a felony under any law of the United States of America, or of any State or Territory or of the District of Columbia relating to narcotic drugs." Ill. Rev. Stat. 1951, chap. 38, par. 192.23.

The prior conviction of the defendant, as alleged in the second count of the indictment, was for unlawful possession of a narcotic drug "in violation of paragraph 192-2, Chap. 38, Ill. Rev. Stats. of 1945," for which the maximum penalty was a fine not exceeding one thousand dollars, or imprisonment in the county jail for a term not exceeding one year, or both such fine and imprisonment.

The People argue that the term "felony" as used in this statute refers only to prior convictions under the laws of the United States or of States other than Illinois, and that it has no application to prior convictions under the Illinois act. It is agreed that the prior conviction involved was a misdemeanor and not a felony. This court had occasion to pass upon this identical issue in the case of *People* v. *Shamery,* 415 Ill. 177. There we held adversely to all contentions made by plaintiff in error herein and we

adhere to that view. The court acted properly in overruling the motion to quash count II.

Defendant next contends the court erred in denying his motion to suppress evidence discovered by a search of the room in which he resided. The record discloses that on Wednesday, April 9, 1952, at or about 10 o'clock A.M., a Chicago police officer received a telephone call from an unidentified person, who informed him that there was a man called Trench Coat—a tall, slim, brown-skinned, colored man about twenty-five or thirty years of age with a gold tooth in the front of his mouth—living in Room 212 of the Strand Hotel with a heavy-set woman; and that this man peddled narcotics and had sold narcotics on the previous evening to an addict. About an hour later this police officer and a partner arrived at the hotel, proceeded to the second floor, and observed a heavy-set woman wearing a robe, standing in the hall in front of Room 212. The door to the room was partly open, and the police officer observed defendant lying in a bed inside the room. The latter resembled in appearance the description given by the unidentified informant on the telephone. The officer arrested the woman, brought her into the room, and searched her, finding five capsules of heroin in the pocket of her robe. He then awakened the defendant, who had been asleep on the bed, and arrested him. In the course of a conversation with the police officer defendant stated that some people called him Trench Coat. The officer raised the mattress from the bed and found a box containing ninety-five capsules of what was later ascertained to be heroin. Defendant admitted the box of capsules belonged to him.

From the petition in support of defendant's motion to suppress evidence, and the hearing thereon, it appears that the hotel room in question was occupied by defendant as his home, and that no warrant was obtained for defendant's arrest or for a search of the premises. Defendant insists

that his arrest was unlawful, that the search of his room was unreasonable and unlawful, and that such unlawful arrest and search were in violation of his constitutional rights and that his motion to suppress evidence should have been sustained.

Section 6 of article II of the Illinois constitution is as follows: "The right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures shall not be violated: and no warrant shall issue without probable cause, supported by affidavit, particularly describing the place to be searched, and the persons or things to be seized."

The provision of the constitution of the United States, relied upon by plaintiff in error, while in somewhat different language, is in effect the same, and the provisions of the two constitutions are construed alike and should be liberally construed in favor of the accused. *People* v. *Grod,* 385 Ill. 584.

A long line of decisions which interpret both the Federal and State constitutions have established the proposition beyond contradiction that the search without warrant of the person and of the vehicle or place where the arrest is made and which is under the control of the accused, subsequent and incident to a lawful arrest, in order to find and seize things connected with the crime or its fruits, or as the means by which it was committed, is lawful and not a violation of the accused's constitutional rights. (*United States* v. *Rabinowitz,* 339 U.S. 56, 94 L. ed. 653; *People* v. *McGowan,* 415 Ill. 375; *People* v. *Tabet,* 402 Ill. 93; *People* v. *Exum,* 382 Ill. 204; *People* v. *Marvin,* 358 Ill. 426; *People* v. *Brown,* 354 Ill. 480; *People* v. *Davies,* 354 Ill. 168; *People* v. *Hord,* 329 Ill. 117.) In each of the foregoing cases a search, either of premises or vehicle, within the control of the arrested party or of the person of the arrested party, was held reasonable and lawful as an incident to a lawful arrest.

The search of the premises here involved being without benefit of a search warrant, the basic issue to be resolved, in order to determine the validity of the position of plaintiff in error, is whether or not his arrest was lawful.

Section 4 of division VI of the Illinois Criminal Code (Ill. Rev. Stat. 1951, chap. 38, par. 657,) provides as follows: "An arrest may be made by an officer or by a private person without warrant, for a criminal offense committed or attempted in his presence, and by an officer, when a criminal offense has in fact been committed, and he has reasonable ground for believing that the person to be arrested has committed it."

In construing this provision of the Illinois Criminal Code, we have consistently held that an officer has the right to arrest without a warrant provided it is shown that a criminal offense has in fact been committed and the arresting officer has reasonable grounds for believing that the person to be arrested is implicated in the offense. *People v. Martin,* 382 Ill. 192; *People v. Humphreys,* 353 Ill. 340; *People v. McGurn,* 341 Ill. 632; *People v. Swift,* 319 Ill. 359; *People v. Mirbelle,* 276 Ill. App. 533; *People v. Fischetti,* 273 Ill. App. 215.

The constitutional guaranties invoked are a protection against unreasonable searches and seizures. If an officer has reasonable ground for believing a person is implicated in a criminal offense, he has a right to arrest and search without a warrant. There is no formula for a determination of what is reasonable. The constantly recurring problem in this field must separately find resolution in the facts and circumstances of each case.

The officers in this case, pursuing their duties in their daily wrestle with crime and criminals, answered a telephone call from some unidentified person. They were told that in Room 212 of the Strand Hotel in the city of Chicago, there was a man called Trench Coat, of a certain description, who was peddling narcotics, and that on the

previous evening he had sold narcotic drugs to an addict. Of great importance, too, they were told that Trench Coat had a confederate operating with him—a heavy-set woman. Armed with this information the officers promptly went to the Strand Hotel, proceeded to the second floor, and thence through the hallway to Room 212. There they found a heavy-set woman standing in the hall in front of Room 212 wearing only a robe. The door to Room 212 was slightly ajar, so that they could see a man lying asleep upon a bed in the room, and his description matched perfectly the one outlined in the anonymous telephone call. The officers searched the woman and found five capsules of heroin. The colored man upon being awakened admitted that he was called Trench Coat.

Did the officers act unreasonably in their arrest of the defendant? We think not. Whoever informed the officer about Trench Coat had been correct in every detail. Section 2 of the act relating to narcotic drugs reads as follows: "It is unlawful for any person to manufacture, possess, have under his control, sell, prescribe, administer, dispense, or compound any narcotic drug, except as authorized in this Act." (Ill. Rev. Stat. 1951, chap. 38, par. 192.2.) Searching the defendant, the officers found 95 capsules of what was later ascertained to be heroin. Finding narcotics on defendant's confederate gave much support to the officer's belief that Trench Coat was trafficking in narcotics. Certainly, the defendant and his confederate were committing a crime in the presence of the officers, because without contradiction they were in possession of, and had under their control, narcotic drugs in violation of the above section.

Next, we are confronted with the inquiry as to whether the search was unreasonable. The 95 capsules of heroin were found in the bed upon which the defendant was sleeping. In the *Rabinowitz case,* there was a valid arrest and a random and far-reaching, rummage and search. Every

desk, safe, closet, nook and corner in defendant's place of business was searched. Countenancing such a search, the majority opinion relied upon *Carroll* v. *United States,* 267 U.S. 132: "When a man is legally arrested for an offense, whatever is found upon his person or in his control which it is unlawful for him to have and which may be used to prove the offense may be seized and held as evidence in the prosecution." Cited also is *Agnello* v. *United States,* 269 U.S. 20, at p. 30: "The right without a search warrant contemporaneously to search persons lawfully arrested while committing crime and to search the place where the arrest is made in order to find and seize things connected with the crime as its fruit or as a means by which it was committed as well as weapons and other things to effect an escape from custody is not to be doubted." Justice Frankfurter in his able dissenting opinion at page 70 said: "With all respect I suggest that it makes a mockery of the Fourth Amendment to sanction search without a search warrant merely because of the legality of an arrest." However, Justice Frankfurter went on to say that if searches following a legal arrest were to be approved, the area must be limited and circumscribed. In this connection he used this language: "The teaching of those cases is that the warrant of arrest carries with it authority to seize all that is on the person or in such immediate physical relation to the one arrested as to be in a fair sense a projection of his person." Finding the capsules in the bed upon which the defendant was lying in such immediate physical relation to him, and applying the most critical test, the search in this case may be properly deemed reasonable. The very restricted area of the search involved may reasonably be said to be a part of the person.

Finding no reversible error, the judgment entered herein should be and is affirmed.

*Judgment affirmed.*

Mr. JUSTICE MAXWELL, dissenting in part and specially concurring in part:

For the reasons set forth in my dissent in *People* v. *Shamery*, 415 Ill. 177, 181, I cannot agree to the overruling of the defendant's motion to quash count II of this indictment. I think that motion should have been allowed.

I concur in that part of this opinion finding the search and seizure reasonable only because I regard the close physical proximity and the defendant's exclusive control of the possession of these narcotics as being equivalent to possession "on his person."

Mr. JUSTICE KLINGBIEL, dissenting:

I cannot agree with the majority opinion, for, with all respect, I suggest that it makes a mockery of section 6 of article II of the Illinois constitution which provides that the right of the people to be secure against unreasonable searches and seizures shall not be violated.