NOTICE: Under Supreme Court Rule 367 a party has 21 days after the filing of the opinion

to request a rehearing. Also, opinions are subject to modification, correction or withdrawal at

anytime prior to issuance of the mandate by the Clerk of the Court. Therefore, because the

following slip opinion is being made available prior to the Court's final action in this matter,

it cannot be considered the final decision of the Court. The official copy of the following

opinion will be published by the Supreme Court's Reporter of Decisions in the Official

Reports advance sheets following final action by the Court.

                                    

              Docket No. 80486--Agenda 14--September 1996.

    THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. PAUL KRUEGER,

                                Appellee.

                    Opinion filed December 19, 1996.

                                    

     CHIEF JUSTICE BILANDIC delivered the opinion of the court:

     The central issue in this appeal is whether section 108--

8(b)(2) of the "no-knock" statute (725 ILCS 5/108--8(b)(2) (West

1994)) violates constitutional guarantees against unreasonable

searches and seizures. We answer in the affirmative. We next hold

that the Illinois Constitution of 1970 prohibits the application of

the good-faith exception to the exclusionary rule recognized in

Illinois v. Krull, 480 U.S. 340, 94 L. Ed. 2d 364, 107 S. Ct. 1160

(1987).

                                   FACTS

     On November 15, 1995, an agent of the Lake County Metropolitan

Enforcement Group and an informant identified as John Doe appeared

before a judge of the circuit court of Lake County and presented a

complaint for a search warrant. The complaint requested a warrant

to search the defendant, Paul Krueger, and his home for the purpose

of seizing cocaine and other items related to the sale of

controlled substances.

     According to the affidavit signed by the agent and John Doe,

they had conducted a controlled purchase of cocaine from the

defendant at his residence within the last 72 hours. John Doe also

attested that he had purchased cocaine from the defendant on prior

occasions and the defendant told him that he keeps guns in his

home. John Doe had personally seen one firearm in the defendant's

home, sometime within the previous two months.

     The circuit judge issued a warrant authorizing the police to

search the defendant and his home. The judge further authorized the

police to enter the defendant's home without knocking and

announcing their office. The judge found that an unannounced entry

was permitted under the no-knock statute (725 ILCS 5/108--8(b)

(West 1994)) because the defendant was known to keep a firearm

there. Subsection (b)(2) of the statute classified the prior

possession of a firearm as an exigent circumstance (725 ILCS 5/108-

-8(b)(2) (West 1994)), which authorized a no-knock entry.

     The next morning police forcibly entered the defendant's home

without knocking and announcing their office. The defendant was

arrested and later charged with unlawful possession of a controlled

substance (720 ILCS 570/402(c) (West 1994)), unlawful possession of

a controlled substance with intent to deliver (720 ILCS

570/401(a)(2)(A) (West 1994)), and armed violence (720 ILCS 5/33A--

2 (West 1994)), based on evidence seized during the search.

     On January 5, 1996, the defendant filed a motion to quash his

arrest and suppress evidence. The parties stipulated to the above

facts and asked the circuit court to rule on the motion as a matter

of law. In the motion, the defendant contended that the mere

presence of a firearm in his home did not constitute an exigent

circumstance, which would excuse the knock-and-announce

requirement. He thus asserted that the police officers' unannounced

entry into his home violated his constitutional rights. The circuit

court of Lake County agreed and granted the defendant's motion to

quash his arrest and suppress evidence.

     Upon a request for clarification by the State, the circuit

court declared subsection (b)(2) of the no-knock statute to be

unconstitutional. The State then argued that the good-faith

exception to the exclusionary rule recognized in Illinois v. Krull,

480 U.S. 340, 94 L. Ed. 2d 364, 107 S. Ct. 1160 (1987), should

apply because the officers, in making their unannounced entry, were

acting in objectively reasonable reliance on a statute later

declared to be unconstitutional. The circuit court declined to

follow Krull based on People v. McGee, 268 Ill. App. 3d 32 (1994),

where our appellate court held that to do so would violate the

Illinois Constitution.

     This direct appeal by the State followed. 134 Ill. 2d Rule

603. We now affirm the circuit court's judgment.

                                 ANALYSIS

                                     I

     The State contends that the circuit court erred in granting

the defendant's motion to quash his arrest and suppress evidence.

According to the State, the police were not required to knock and

announce their office before entering the defendant's home because

they had a warrant issued pursuant to subsection (b)(2) of the no-

knock statute authorizing their unannounced entry.

     The defendant counters that subsection (b)(2) of the no-knock

statute contravenes the fourth and fourteenth amendments to the

United States Constitution and article I, section 6, of the

Illinois Constitution of 1970. He asserts that subsection (b)(2)

unconstitutionally classifies the mere presence of a firearm in a

home as an exigent circumstance. He therefore maintains that the

officers' unannounced entry into his home based on subsection

(b)(2) violated his constitutional rights.

     A circuit court's ruling on a motion to quash arrest and

suppress evidence generally is subject to reversal only if

manifestly erroneous. People v. Saechao, 129 Ill. 2d 522, 534

(1989). This case, however, involves the circuit court's

application of the law to uncontroverted facts. Consequently, this

case presents a question of law for which we conduct de novo

review. See People v. Dilworth, 169 Ill. 2d 195, 201 (1996).

     Section 108--8(b) of the Code of Criminal Procedure of 1963

(725 ILCS 5/108--8(b) (West 1994)), the "no-knock" statute,

purports to set forth the circumstances under which law enforcement

officials may execute a warrant by entering a dwelling without

first knocking and announcing their office. The subsection of the

statute at issue in this case, subsection (b)(2), provides:

               "(b) Upon a finding by the judge issuing the warrant

          that any of the following exigent circumstances exist,

          the judge may order the person executing the warrant to

          make entry without first knocking and announcing his

          office:

                    ***

                    (2) the prior possession of firearms by an

               occupant of the building within a reasonable period

               of time[.]" 725 ILCS 5/108--8(b)(2) (West 1994).

Subsection (b)(2) authorizes the judge issuing a warrant to order

police to make a no-knock entry based solely on the so-called

exigent circumstance of an occupant's prior possession of firearms

within a reasonable time period. In the present case, there is no

dispute that subsection (b)(2) was fully complied with when the

circuit judge who issued the warrant ordered police to make a no-

knock entry into the defendant's home based solely on the

circumstance that the defendant was known to keep a firearm there.

The issue before us is whether subsection (b)(2) violates the

federal or state constitutions (U.S. Const., amends. IV, XIV; Ill.

Const. 1970, art. I, §6), as the defendant claims.

     The fourth and fourteenth amendments to the United States

Constitution provide that the "right of the people to be secure in

their persons, houses, papers, and effects, against unreasonable

searches and seizures" shall not be violated by government

officials. U.S. Const., amend. IV; see Elkins v. United States, 364

U.S. 206, 213, 4 L. Ed. 2d 1669, 1675, 80 S. Ct. 1437, 1442 (1960)

(this fourth amendment prohibition is applicable to state officials

through the fourteenth amendment). Similarly, article I, section 6,

of the Illinois Constitution of 1970 guarantees that the "People

shall have the right to be secure in their persons, houses, papers

and other possessions against unreasonable searches [and]

seizures." Ill. Const. 1970, art. I, §6. The language of the two

constitutional provisions concerning unreasonable searches and

seizures is nearly identical. Because the defendant makes no

distinction between the federal and state provisions in his

argument on this issue, we measure his constitutional protections

under both using the same standard. See People v. Tisler, 103 Ill.

2d 226, 235-36, 243 (1984).

     The underlying command of the fourth amendment is that

searches and seizures by governmental officials be reasonable. In

Wilson v. Arkansas, 514 U.S. ___, 131 L. Ed. 2d 976, 115 S. Ct.

1914 (1995), the United States Supreme Court held for the first

time that part of the reasonableness inquiry under the fourth

amendment is whether police complied with the knock-and-announce

rule. The basic principle behind this rule is that an officer may

not enter a dwelling, even pursuant to a valid warrant, without

first requesting admittance and announcing the reason why the

officer is there. See Wilson, 514 U.S. at ___, 131 L. Ed. 2d at

981, 115 S. Ct. at 1917. The rule's general purposes are (1) to

decrease the potential for violence, as it is recognized that an

unannounced breaking and entering could easily lead the occupants

to take defensive measures; (2) to protect privacy as much as

possible by giving the occupants notice of the impending intrusion

by police and time to respond; and (3) to prevent the physical

destruction of property where it is not necessary. E.g., People v.

Condon, 148 Ill. 2d 96, 103 (1992); 1 W. LaFave & J. Israel,

Criminal Procedure §3.4(h), at 230-31 (2d ed. 1984).

     The Court in Wilson traced the knock-and-announce principle

from thirteenth-century England to its early widespread acceptance

in the United States. Wilson, 514 U.S. at ___, 131 L. Ed. 2d at

980-82, 115 S. Ct. at 1916-18. "Given the longstanding common-law

endorsement of the practice of announcement," the Court had "little

doubt that the Framers of the Fourth Amendment thought that the

method of an officer's entry into a dwelling was among the factors

to be considered in assessing the reasonableness of a search or

seizure." Wilson, 514 U.S. at ___, 131 L. Ed. 2d at 982, 115 S. Ct.

at 1918. Consequently, the Court concluded that "in some

circumstances an officer's unannounced entry into a home might be

unreasonable" and, therefore, unconstitutional under the fourth

amendment. Wilson, 514 U.S. at ___, 131 L. Ed. 2d at 982, 115 S.

Ct. at ___.

     The Court went on to explain that the fourth amendment's

reasonableness requirement does not "mandate a rigid rule of

announcement" in every situation. Wilson, 514 U.S. at ___, 131 L.

Ed. 2d at 982, 115 S. Ct. at 1918. Rather, the Court recognized

that there are certain circumstances under which an unannounced

entry is constitutionally reasonable, such as where there is a

threat of physical violence or where officers have reason to

believe that evidence will be destroyed if advance notice is given.

Wilson, 514 U.S. at ___, 131 L. Ed. 2d at 982-84, 115 S. Ct. at

1918-19, citing Ker v. California, 374 U.S. 23, 38-41, 10 L. Ed. 2d

726, 740-42, 83 S. Ct. 1623, 1632-34 (1963) (plurality opinion).

The Court nonetheless declined to catalog all these circumstances,

expressly leaving this task to the lower courts. Wilson, 514 U.S.

at ___, 131 L. Ed. 2d at 984, 115 S. Ct. at 1919.

     Prior to Wilson, this court considered the knock-and-announce

rule in determining whether an entry preceding an arrest or a

search is "constitutionally reasonable." E.g., People v. Wolgemuth,

69 Ill. 2d 154, 166 (1977). This court's decisions, like Wilson,

recognize that compliance with the knock-and-announce rule is not

required in every situation. According to our precedent, officers

are excused from making the ordinary announcements where "exigent

circumstances" exist sufficient to justify the intrusion. E.g.,

People v. Ouellette, 78 Ill. 2d 511, 518 (1979). In general,

exigent circumstances encompass such considerations as danger to

the police officers executing the warrant, the uselessness of the

announcement, or the ease with which evidence may be destroyed.

E.g., Ouellette, 78 Ill. 2d at 518.

     The State contends that subsection (b)(2) survives the

defendant's constitutional challenges because it recognizes a

legitimate exigent circumstance. As noted above, subsection (b)(2)

authorizes an unannounced entry where the judge finds that "an

occupant of the building" to be searched has possessed firearms

"within a reasonable period of time." 725 ILCS 5/108--8(b)(2) (West

1994). The State reasons that, where a person is known to have

recently possessed firearms, the logical inference is that the

officers executing the warrant will be in danger if they first

knock and announce their office. This court has rejected this

rationale before.

     In People v. Condon, 148 Ill. 2d 96, 101 (1992), 12 drug

enforcement agents, acting on a valid search warrant, entered a

home with the aid of a battering ram. They did not knock or

announce themselves in any way. The complaint on which the warrant

was based noted that the two brothers who resided in the home had

sold cocaine to a police informant. The informant attested that

when he purchased cocaine from the brothers at their home, he saw

several weapons which were used to protect drugs and currency, as

well as two closed circuit television cameras and a police scanner.

In addition, an agent averred that when she arrested one brother

two years earlier for drug possession, he was armed with a loaded

.22-caliber Baretta semi-automatic pistol.

     This court specifically rejected the State's argument that the

known presence of firearms in the Condon home created an exigent

circumstance justifying the no-knock entry. Following established

precedent, this court held that an exigent circumstance does not

result from the mere presence of firearms in the building to be

searched; rather, the officers must have a reasonable belief that

a weapon will be used against them if they proceed with the

ordinary announcements. Condon, 148 Ill. 2d at 104-06, citing

People v. Ouellette, 78 Ill. 2d 511, 520-21 (1979) (establishing

the rule in Illinois); accord Poole v. United States, 630 A.2d

1109, 1118 (D.C. 1993) (and the many cases cited therein); see

generally 1 W. LaFave & J. Israel, Criminal Procedure §3.6(b), at

264 (2d ed. 1984) (stating that "it is not enough that the person

to be arrested is known to own a weapon," in discussing exigent

circumstances). The record contained no such evidence, the court

found. Although the brothers were known to own and carry firearms,

they were not known to be violent or to threaten to use violence.

This court explained why the rule of announcement prevails in

circumstances such as these, stating:

               "Indeed, the need for compliance with the knock-and-

          announce rule would seem to be even greater where the

          police know there are weapons present, but the persons

          involved are not known to have a propensity to use

          weapons. Any citizen in the privacy of his or her home

          might resort to the use of violence if threatened by a

          completely unexpected and unannounced entry into the

          home, let alone someone who is involved in the world of

          drugs. Again, we reiterate that the purpose of the knock-

          and-announce rule is to prevent what could turn out to be

          deadly encounters between police and citizens." Condon,

          148 Ill. 2d at 107-08.

After rejecting the State's other claimed exigencies, this court

held that the agents' unannounced entry into the brothers' home

violated the constitutional requirements of reasonableness and

suppressed the evidence resulting from the search. Condon, 148 Ill.

2d at 102-08.

     Applying the precedent discussed above, we hold that

subsection (b)(2) is unconstitutional. Subsection (b)(2) authorizes

no-knock entries based solely on an occupant's prior possession of

firearms. The above precedent establishes, however, that such

entries violate the constitutional requirements of reasonableness.

Given this clear conflict between subsection (b)(2) and the federal

and state constitutions, subsection (b)(2) cannot stand.

     We reject the State's attempt to distinguish subsection (b)(2)

from Condon. The State argues that the statute is different because

it provides for a neutral and detached magistrate who determines

whether exigent circumstances exist in any given case. We disagree

with this interpretation of subsection (b)(2). By its plain

language, subsection (b)(2) defines an occupant's prior possession

of firearms to be an exigent circumstance, and it authorizes a no-

knock entry based solely on this so-called exigent circumstance. As

our earlier discussion reveals, such an entry is not

constitutionally reasonable. We thus conclude that the judge's

participation under subsection (b)(2) does not cure its

constitutional infirmities.

     We note that, under Condon, a no-knock entry is

constitutionally reasonable where officers have a reasonable belief

that an occupant will use a firearm against them if they proceed

with the ordinary announcements. Condon, 148 Ill. 2d at 104-06. The

record in the present case is barren of any evidence to this

effect. We therefore conclude that no exigent circumstance existed

here and, as a result, the officers' unannounced entry into the

defendant's home violated his constitutional rights to be free from

unreasonable searches and seizures.

                                    II

     Having concluded that subsection (b)(2) is unconstitutional,

we must next determine whether the evidence seized from the

defendant's home should be excluded. The State argues that we

should reverse the circuit court's suppression order based on the

good-faith exception to the exclusionary rule recognized in

Illinois v. Krull, 480 U.S. 340, 94 L. Ed. 2d 364, 107 S. Ct. 1160

(1987). We hold that the Krull good-faith exception does not

comport with article I, section 6, of the Illinois Constitution of

1970.

     In Krull, a bare majority of the United States Supreme Court

extended the good-faith exception to the exclusionary rule first

established in United States v. Leon, 468 U.S. 897, 82 L. Ed. 2d

677, 104 S. Ct. 3405 (1984). Krull, 480 U.S. 340, 94 L. Ed. 2d 364,

107 S. Ct. 1160. In Leon, the Court held that the fourth amendment

exclusionary rule will not bar the use of evidence obtained by a

police officer who reasonably relied, in objective good faith, on

a search warrant issued by a neutral and detached magistrate, but

ultimately found to be unsupported by probable cause. Leon, 468

U.S. 897, 82 L. Ed. 2d 677, 104 S. Ct. 3405. The Krull majority

broadened this good-faith exception, holding that the fourth

amendment exclusionary rule does not bar the use of evidence seized

by a police officer who reasonably relied, in objective good faith,

on a statute that authorizes a warrantless administrative search,

but the statute is later declared to be unconstitutional. Krull,

480 U.S. 340, 94 L. Ed. 2d 364, 107 S. Ct. 1160. Following the

rationale set forth in Leon, the Krull Court stated that the basic

purpose of the fourth amendment exclusionary rule is to deter

future misconduct. The Court reasoned that the exclusionary rule's

application in situations where police officers conducted a search

in reliance on the authority of a statute, which is only later

determined to be unconstitutional, would have little deterrent

effect on future police misconduct. Krull, 480 U.S. at 347-49, 94

L. Ed. 2d at 373-75, 107 S. Ct. at 1165-67. A major underpinning of

the majority's decision was its determination that legislators are

not inclined to act in contravention of fourth amendment values; as

a result, the majority found no evidence that the exclusionary rule

is necessary to deter legislators from enacting unconstitutional

statutes. Krull, 480 U.S. at 349-52, 94 L. Ed. 2d at 375-77, 107 S.

Ct. at 1167-69. In the final analysis, when the Court weighed the

"incremental deterrent" effect of the exclusionary rule's

application in these situations against the substantial social

costs exacted by the rule, it determined that the exclusionary rule

must fall. Krull, 480 U.S. at 352-53, 94 L. Ed. 2d at 377, 107 S.

Ct. at 1168. The Court did allow for two exceptions to Krull's

extended good-faith exception, however. It does not apply if (1) in

enacting the statute, the legislature wholly abandoned its

responsibility to enact constitutional laws; or (2) the statute's

provisions are such that a reasonable officer should have known

that the statute was not constitutional. Krull, 480 U.S. at 355, 94

L. Ed. 2d at 378-79, 107 S. Ct. at 1170.

     Justice O'Connor's dissent revealed several serious flaws in

the majority's decision. She pointed out that this newly created

exception to the fourth amendment exclusionary rule provides a

"grace period" for unconstitutional search and seizure legislation,

during which time "the State is permitted to violate constitutional

requirements with impunity." Krull, 480 U.S. at 361, 94 L. Ed. 2d

at 382, 107 S. Ct. at 1173 (O'Connor, J., dissenting, joined by

Brennan, Marshall and Stevens, JJ.). Further, Justice O'Connor did

not find the majority's extension of the good-faith exception to be

supported by Leon's rationale. She persuasively distinguished Leon

on the following grounds. First, there is a "powerful historical

basis for the exclusion of evidence gathered pursuant to a search

authorized by an unconstitutional statute." Krull, 480 U.S. at 362,

94 L. Ed. 2d at 383, 107 S. Ct. at 1173 (O'Connor, J., dissenting,

joined by Brennan, Marshall and Stevens, JJ.). Not only were such

statutes "the core concern of the Framers of the Fourth Amendment,"

the exclusionary rule had regularly been applied to suppress

evidence gathered under unconstitutional statutes. Krull, 480 U.S.

at 362-63, 94 L. Ed. 2d at 383-84, 107 S. Ct. at 1173-74 (O'Connor,

J., dissenting, joined by Brennan, Marshall and Stevens, JJ.),

citing, e.g., Ybarra v. Illinois, 444 U.S. 85, 62 L. Ed. 2d 238,

100 S. Ct. 338 (1979). Second, Justice O'Connor found this history

illustrative of the fact that the relevant state actors in Krull--

legislators--often pose a serious threat to fourth amendment

values. She saw a clear distinction between the legislator and the

judicial officer who mistakenly issued a warrant in Leon. She

noted:

          "The judicial role is particularized, fact-specific and

          nonpolitical. Judicial authorization of a particular

          search does not threaten the liberty of everyone, but

          rather authorizes a single search under particular

          circumstances. The legislative act, on the other hand,

          sweeps broadly, authorizing whole classes of searches,

          without any particularized showing. A judicial officer's

          unreasonable authorization of a search affects one person

          at a time; a legislature's unreasonable authorization of

          searches may affect thousands or millions and will almost

          always affect more than one. Certainly the latter poses

          a greater threat to liberty." Krull, 480 U.S. at 365, 94

          L. Ed. 2d at 385, 107 S. Ct. at 1175 (O'Connor, J.,

          dissenting, joined by Brennan, Marshall and Stevens,

          JJ.).

Having successfully distinguished Leon, Justice O'Connor next

pointed out that "the novelty" of the majority's decision was

"illustrated by the fact that [under it] no effective remedy is to

be provided in the very case in which the statute at issue was held

unconstitutional." Krull, 480 U.S. at 368, 94 L. Ed. 2d at 387, 107

S. Ct. at 1177 (O'Connor, J., dissenting, joined by Brennan,

Marshall and Stevens, JJ.). As she noted, the lack of a remedy

leaves no incentive for the aggrieved defendant to challenge the

statute as unconstitutional. Justice O'Connor last questioned how

the limited exceptions to the Krull good-faith exception could be

applied in practice. "Under what circumstances a legislature can be

said to have `wholly abandoned' its obligation to pass

constitutional laws is not apparent on the face of the Court's

opinion." Krull, 480 U.S. at 369, 94 L. Ed. 2d at 388, 107 S. Ct.

at 1177 (O'Connor, J., dissenting, joined by Brennan, Marshall and

Stevens, JJ.).

     The State's argument that we should reverse the circuit

court's suppression order is based solely on Krull. Krull is

controlling in this case as to whether there is a federal

constitutional basis for excluding the evidence seized from the

defendant's home. Pursuant to Krull, exclusion of this evidence is

not supportable on the ground that it was obtained by virtue of an

unconstitutional statute. We nevertheless hold that the

exclusionary rule arising out of our state constitution (Ill.

Const. 1970, art. I, §6) continues to afford the protection

abrogated by Krull.

     This court unquestionably has the authority to interpret

provisions of our state constitution more broadly than the United

States Supreme Court interprets similar provisions of the federal

constitution. People v. Perry, 147 Ill. 2d 430, 436 (1992). We

acknowledge that this court has long applied the lockstep doctrine

to follow Supreme Court decisions in fourth amendment cases. People

v. Tisler, 103 Ill. 2d 226, 241-46 (1984); People v. Tillman, 1

Ill. 2d 525, 529-30 (1953). We knowingly depart from that tradition

here, for the reasons set forth below.

     Initially, we note that our state exclusionary rule has

applied in Illinois for more than 70 years to suppress evidence

gathered in violation of the Illinois Constitution's prohibition

against unreasonable searches and seizures. People v. Brocamp, 307

Ill. 448 (1923) (this court, following the United States Supreme

Court's recognition of the federal exclusionary rule arising out of

the fourth amendment in Weeks v. United States, 232 U.S. 383, 58 L.

Ed. 652, 34 S. Ct. 341 (1914), recognized a separate state

exclusionary rule arising out of similar language in the Illinois

Constitution); see also Mapp v. Ohio, 367 U.S. 643, 6 L. Ed. 2d

1081, 81 S. Ct. 1684 (1961) (extending the federal exclusionary

rule by applying it to state governmental officials through the due

process clause of the fourteenth amendment, thereby rendering our

state exclusionary rule superfluous after nearly four decades of

independent application). This exclusionary rule has always been

understood to bar evidence gathered under the authority of an

unconstitutional statute (see Brocamp, 307 Ill. 448 (adopting the

reasoning in Weeks for purposes of our state exclusionary rule);

Weeks, 232 U.S. at 394, 58 L. Ed. at 656, 34 S. Ct. at 345 (making

it clear that the federal exclusionary rule was intended to apply

to evidence gathered by officers acting under "legislative ***

sanction")), so long as that statute purported to authorize an

unconstitutional search or seizure (see Michigan v. DeFillippo, 443

U.S. 31, 61 L. Ed. 2d 343, 99 S. Ct. 2627 (1979) (recognizing a

substantive-procedural distinction not at issue here; specifically

holding that the fourth amendment exclusionary rule did not apply

where an ordinance was held unconstitutional on vagueness

grounds)). Consequently, to adopt Krull's extended good-faith

exception would drastically change this state's constitutional law.

     This court is obliged to evaluate the rationale underlying

Krull in determining whether to adopt its extended good-faith

exception for purposes of the exclusionary rule arising out of our

state constitution. Like the United States Supreme Court, this

court employs a balancing test to delineate the scope of our state

exclusionary rule: "Decisions involving the exclusionary rule and

the Illinois Constitution's article I, section 6, require that we

carefully balance the legitimate aims of law enforcement against

the right of our citizens to be free from unreasonable governmental

intrusion." People v. Tisler, 103 Ill. 2d 226, 245 (1984); cf.

Krull, 480 U.S. at 352-53, 94 L. Ed. 2d at 377, 107 S. Ct. at 1168-

69; Leon, 468 U.S. at 907, 82 L. Ed. 2d at 688, 104 S. Ct. at 3412.

In performing this duty here, we conclude that our citizens' rights

prevail. We are not willing to recognize an exception to our state

exclusionary rule that will provide a grace period for

unconstitutional search and seizure legislation, during which time

our citizens' prized constitutional rights can be violated with

impunity. We are particularly disturbed by the fact that such a

grace period could last for several years and affect large numbers

of people. This is simply too high a price for our citizens to pay.

We therefore conclude that article I, section 6, of the Illinois

Constitution of 1970 prohibits the application of Krull's extended

good-faith exception to our state exclusionary rule.

     Not surprisingly, several fourth amendment scholars have

severely criticized Krull. E.g., 1 W. LaFave, Search & Seizure

§1.3(h), at 96-99 (3d ed. 1996). Our own appellate court has

determined that the Krull good-faith exception violates the

Illinois Constitution. People v. McGee, 268 Ill. App. 3d 32 (1994).

In addition, several state courts of last resort presumably will

reject Krull's extension of the good-faith exception based on their

determination that the Leon good-faith exception violates their

respective state constitutions. See State v. Guzman, 122 Idaho 981,

842 P.2d 660 (1992); Commonwealth v. Edmunds, 526 Pa. 374, 586 A.2d

887 (1991); State v. Oakes, 157 Vt. 171, 598 A.2d 119 (1991); State

v. Marsala, 216 Conn. 150, 579 A.2d 58 (1990); State v. Carter, 322

N.C. 709, 370 S.E.2d 553 (1988); State v. Novembrino, 105 N.J. 95,

519 A.2d 820 (1987). This result is self-evident because one cannot

reject Leon's good-faith exception and accept Krull's extension of

that exception.

     Before concluding, we note that our decision today does not

impact the Leon good-faith exception. See People v. Turnage, 162

Ill. 2d 299, 306 (1994). Although the converse is not true, one can

fully accept the rationale and result in Leon while rejecting the

rationale and result in Krull. This is precisely what Justice

O'Connor did in her dissent in Krull.

     For the reasons stated, we affirm the circuit court's

suppression order. The circuit court's judgment is therefore

affirmed in its entirety.

   

                                                                Affirmed.

                                                                         

     JUSTICE MILLER, dissenting:

     I do not agree with the majority's conclusion that the

Illinois Constitution forbids in this case what the United States

Constitution clearly allows. I would therefore apply the good-faith

exception recognized by the Supreme Court in Illinois v. Krull, 480

U.S. 340, 94 L. Ed. 2d 364, 107 S. Ct. 1160 (1987), and reverse the

circuit court's order suppressing the evidence seized from the

defendant.

     In People v. Tisler, 103 Ill. 2d 226, 245 (1984), this court

defined the circumstances under which it is appropriate to

interpret provisions of the Illinois Constitution differently from

their federal counterparts:

               "After having accepted the pronouncements of the

          Supreme Court in deciding fourth amendment cases as the

          appropriate construction of the search and seizure

          provisions of the Illinois Constitution for so many

          years, we should not suddenly change course and go our

          separate way simply to accommodate the desire of the

          defendant to circumvent what he perceives as a narrowing

          of his fourth amendment rights under the Supreme Court's

          decision ***. Any variance between the Supreme Court's

          construction of the provisions of the fourth amendment in

          the Federal Constitution and similar provisions in the

          Illinois Constitution must be based on more substantial

          grounds. We must find in the language of our

          constitution, or in the debates and the committee reports

          of the constitutional convention, something which will

          indicate that the provisions of our constitution are

          intended to be construed differently than are similar

          provisions in the Federal Constitution, after which they

          are patterned."

     In the present case, the majority does not point to anything

in either the text or history of our state constitution that would

warrant this court in reaching a result different from the one

reached by the United States Supreme Court in Krull. In the absence

of a valid ground for distinguishing the language of article I,

section 6, of the Illinois Constitution from the fourth amendment,

I would adhere to Krull and recognize, in our own state

constitution, a good-faith exception to the exclusionary rule when

searches and seizures are conducted under statutes that are later

held invalid. Because the statute here was not so obviously

unconstitutional as to render the good-faith exception inapplicable

(see Krull, 480 U.S. at 355, 94 L. Ed. 2d at 378-79, 107 S. Ct. at

1170), I would reverse the trial court's order suppressing the

evidence seized in this case.

     It should be noted, moreover, that the officers in the present

case were not resting simply on their own interpretations of the

statute but were acting pursuant to a warrant that authorized a no-

knock entry; the warrant is defective only because the statute on

which it depends is now found to be unconstitutional. A number of

the concerns cited by the majority in opposition to Krull are

therefore inapplicable to this case, in which a judicial

intermediary stood between the statute and the search.

     Just as the majority follows federal law in evaluating the

validity of the statute under both the federal and state

constitutions, so too should we follow federal law in applying the

good-faith exception to the exclusionary rule. In comparing article

I, section 6, and the fourth amendment, the majority correctly

recognizes, "The language of the two constitutional provisions

concerning unreasonable searches and seizures is nearly identical"

(slip op. at 4), and the majority invokes Tisler and other

decisions involving the fourth amendment in determining that the

statute at issue here is invalid. Having found the statute

unconstitutional under federal law, however, the majority

incongruously fails to follow the same line of authority in

considering the application of the good-faith exception to the

exclusionary rule.